## TEXAS ELEVATOR AND COMPRESS COMPANY
## v. T. B. MITCHELL.

### No. 256.

**Fraud — Pleading — Tender — Agency— Evidence— Verdict — Judgment.—** Mitchell recovered judgment for $15,200, with interest, against appellant. Appellant perfected appeal to the Supreme Court, and the judgment was affirmed. A broker who claimed to be acting for appellant approached Mitchell and stated to him that the judgment had been reversed, and induced Mitchell to accept $10,000, which was then about one-half of the judgment and interest, in settlement thereof, and to transfer the judgment to Bradford, who procured the broker to negotiate with Mitchell. Mitchell was induced to make the sale of the judgment by the information that the case had been reversed, and he would not have made it had he known the real facts. Bradford drew the transfer of the judgment, and knew at the time that Mitchell was making the sale under the mistaken impression that the judgment had been reversed and the cause remanded, although Bradford had in his possession at the time a copy of the opinion of the Supreme Court affirming the judgment. Bradford did not reveal to Mitchell the real facts, although asked by him at the time if there was anything new about the case. Appellant was the beneficiary of the transfer made by Mitchell to Bradford, who had no beneficiary interest in the transfer, and was only acting as agent. After the transfer Bradford released the judgment. In a suit by Mitchell against appellant, Bradford, and the sureties on the supersedeas appeal bond to set aside the sale and assignment of the judgment, or in the alternative for damages, there was a verdict against appellant and for the sureties on the supersedeas bond, and no finding as to Bradford. Judgment was rendered annulling the transfer of the judgment and the release thereof by Bradford, and re-establishing same as affirmed by the Supreme Court, less a credit of said $10,000. On appeal by appellant alone, *Held:*

1. The facts alleged constituted fraud, although Mitchell was already under the impression that the judgment had been reversed.

2. Appellant can not complain that the petition did not tender back the $10,000 already received by appellee. If appellant furnished the money paid by Bradford, it is fairly credited upon the judgment; if not, it can not complain at the benefit conferred in getting a credit for same.

3. It was not error to allow Mitchell to testify that the broker claimed to be acting for appellant. While this evidence alone would not be sufficient to prove his agency, it was a circumstance which, in connection with the other facts, tended to show that he was acting for appellant.

4. If a fraud was in fact perpetrated upon Mitchell by the parties making the negotiation, and the benefit of such fraud was accepted by appellant with the knowledge of the fraudulent acts, such beneficiary can not be heard to deny the agency.

5. It is necessary that there should be a fiduciary relation between the parties to a transaction before a court of equity will give relief against an actual fraud.

6. Appellant can not complain of the judgment rendered against Bradford. If it was rendered without any verdict, he alone can take advantage of it; but under the pleadings a judgment against him was not erroneous.

APPEAL from Dallas County. Tried below before Hon. R. E. BURKE.

*Alex. White* and *McCormick & Spence,* for appellant.—1. The burden of proof is on the party complaining. He must be deceived, and if he act upon independent information and not in a belief of the wrong-doer's representation, he is not deceived by the person of whom he complains. Big. on Fraud, p. 64, chap. 1, sec. 4; Hagee v. Grossman, 31 Ind., 223; Tuck v. Downing, 76 Ill., 71; Halls v. Thompson, 1 Smed. & M., 443; Whiting v. Hill, 23 Mich., 339.

2. To constitute fraud: (1) There must be a relation of trust and confidence between the parties. The party deceiving must be under some obligation or duty to disclose, or truthfully represent, and the party deceived must have the right to rely upon the failure to disclose, or upon the representation made. Jackson v. Stockbridge, 29 Texas, 394; 1 Story Eq., secs. 191, 197; Juzan v. Toulmin, 9 Ala., 672; 44 Am. Dec., 449; Jenkins v. Long, 19 Ind., 28; 81 Am. Dec., 374, and note, 376; Ins. Co. v. Reed, 33 Ohio St., 292.

(2) There must be a false representation, or a fraudulent conceal-ment of a material fact, and the party complaining must have relied upon and been deceived or misled by that false representation or fraudulent concealment, and must have acted upon it to his injury. Marshall v. Hubbard, 117 U. S., 416; Jenkins v. Long, 19 Ind., 28; Fulton v. Hood, 34 Pa. St., 365; 75 Am. Dec., 664, 688, and note, 672.

(3) The means and opportunity for information and knowledge of the facts must have been unequal, the party deceiving having an ad-vantage in that respect. Mitchell v. Zimmerman, 4 Texas, 79; 1 Story Eq., secs. 149, 200, 207; Bell v. Byerson, 77 Am. Dec., 102, 143.

3. Where these conditions exist the law imputes fraud, and gives redress for injuries caused by its perpetration, but when (1) the par-ties are openly and avowedly antagonistic and hostile, and no trust or confidence is reposed; or (2) when a party was not misled or deceived by the false representations of fraudulent concealment of the other party, but was already deceived as to the fact from other and outside sources, and acted upon it to his injury; or (3) where the means and opportunities for ascertaining the fact were open and known, and equally and easily accessible to both parties, and when the party com-plaining neglected to use the means and opportunities which he had of finding out the fact of which he was ignorant, and made no effort

to find it out, and acted upon his ignorance of it to his injury, the law gives no redress. Fawnsworth v. Dufner, 142 U. S., 48; Slaughter's Admr. v. Gerson, 13 Wall., 379; 2 Pom. Eq. Jur., sec. 892; 2 Kent's Com., 4 ed., sec. 39, p. 485; Big. on Fraud., p. 64, chap. 1, sec. 4; Silver v. Frazier, 3 Allen, 382; 81 Am. Dec., 662; Rockafellow v. Baker, 80 Am. Dec., 624.

4. In every case where for fraud, accident, or mistake a party seeks the aid of a court of equity to set aside and cancel the contract of sale, if he has received anything under the contract he must restore or offer to restore it. And this must appear upon the face of the petition. Thomas v. Beaton, 25 Texas Supp., 318, 321; Harris v. Catlin, 37 Texas, 582; Harris v. Catlin, 53 Texas, 8; Clay v. Hart, 49 Texas, 436.

*Watts, Aldridge & Eckford,* for appellee.—1. Plaintiff's second amended original petition charged a conspiracy on the part of all the defendants to cheat and defraud him, and that in pursuance thereof, through their agents, Bradford and Randle, they represented to plaintiff that the judgment theretofore obtained by plaintiff against said defendants had been reversed, when in fact it had been affirmed, which representation was false, and that defendant knew of its falsity, and that plaintiff relied on said representation, and was thereby induced to enter into a compromise and settlement of said matter.

We submit, that to constitute fraud sufficient to set aside said release and transfer of judgment, it was not necessary to allege that appellee was misled solely by said false representation, but if the representation contributed to appellee's deception, and if in making the release he relied thereon, this would complete the fraud. Mitchell v. Zimmerman, 4 Texas, 79; George v. Taylor, 55 Texas, 102; Henderson v. Railway, 17 Texas, 560; Keen v. James, 39 N. J. Eq., 527; Kerr on Fraud (Bump), pp. 98, 100.

To rescind the release and transfer obtained by fraud, and reinstate the judgment, plaintiff is not required to refund the amount received by him, if it has discharged a lien upon appellant's property; or if he credits the amount upon a valid judgment which is a valid lien upon appellant's property. Burns v. Ledbetter, 54 Texas, 383; French v. Grenet, 57 Texas, 280; Stone v. Heirs of Crawford, 1 Texas U. C., 505; Freem. on Ex., secs. 351, 352.

2. If under the proof appellant authorized Bradford and Randle to negotiate for the release and transfer of the judgment, or if appellant ratified the acts and declarations of Bradford and Randle by accepting the result of their acts and declarations, then their acts and delarations would be binding upon appellant. The acceptance of the benefits of a fraud estops the beneficiary from denying the agency by which it was perpetrated. Brown v. Bridges, 70 Texas, 664, 665; Mech. on Ag., secs. 148, 151; 1 Am. and Eng. Encyc. of Law, p. 439, and note 2.

LIGHTFOOT, CHIEF JUSTICE.—The following statement of the case by appellants is concurred in by appellee, and is substantially correct:

Suit by T. B. Mitchell, plaintiff, against the Texas Elevator and Compress Company, a private corporation, C. F. Carter, Royal A. Ferris, W. White, and Chapman Bradford, defendants, to set aside a sale, transfer, and assignment of a judgment made by plaintiff, or in the alternative, for damages against defendants.

Plaintiff alleged, that on May 18, 1887, he recovered a judgment against defendant herein, the Texas Elevator and Compress Company, in the District Court of Dallas County, Texas, for the sum of $15,200, with interest thereon at 8 per cent, and costs, from which defendant, the Texas Elevator and Compress Company, took and perfected an appeal to our Supreme Court. That defendants herein, C. F. Carter, Royal A. Ferris, and W. White, became sureties on the supersedeas appeal bond, which was in the sum of $35,000, conditioned as required by law.

That pending the appeal plaintiff caused an abstract of his said judgment to be properly recorded and indexed, and thus same became a lien on all lands of the defendant, the Texas Elevator and Compress Company, in Dallas County.

That afterward, on June 24, 1890, the Supreme Court affirmed said judgment, and it was by said Supreme Court adjudged that plaintiff, T. B. Mitchell, recover of the defendant, the Texas Elevator and Compress Company, and its said sureties on the appeal bond, the amount adjudged below, and costs.

That the Dallas Morning News, however, contained a report of said case, and in its issue of June 25, 1890, said paper reported that same had been reversed and remanded. That plaintiff was then absent from the State, but on June 26 he returned to his home in Dallas, and was then and there informed by his family and friends that the Supreme Court had reversed and remanded said suit, and that it had been so reported in the newspapers.

That from thence, and until to wit, the 11th day of August, 1890, the plaintiff firmly believed that the Supreme Court had reversed said judgment and remanded said cause. That on the 8th day of July, 1890, one Francis L. Randle, who claimed to be acting therein for and as agent for the defendant, the Texas Elevator and Compress Company, and plaintiff so believes and is informed that said Randle was so acting, approached plaintiff and proposed a compromise and settlement of said cause, and then and there stated and represented that said judgment had been reversed and remanded by the Supreme Court. That in making the proposed compromise and settlement, the said Randle and said defendant Chapman Bradford and the officers of the Texas Elevator and Compress Company were acting together and in

the interest and in behalf of said Texas Elevator and Compress Company, and to that end and purpose they, together with the other defendants and other persons unknown to plaintiff, had combined, confederated, and conspired together for the purpose and with the intent to cheat, wrong, and defraud the plaintiff, they knowing that plaintiff believed that said cause had been reversed and remanded, but themselves knowing that same had been affirmed. That defendants, in furtherance of said combination and conspiracy to cheat, wrong, and defraud the plaintiff, stated and represented to plaintiff that said cause had been reversed and remanded, and urged that as a reason why plaintiff should compromise and settle the matter. That plaintiff, relying upon such statements and representations, was induced thereby to enter into a compromise and settlement of the suit, and he then and there did accept from the defendant, the Texas Elevator and Compress Company, the sum of $10,000, and did for that consideration execute and deliver to said defendant a receipt in full against said claim.

That to more effectually consummate the fraud and defeat plaintiff, from securing relief against same, the defendant Chapman Bradford did, on to wit, July 16, 1890, induce the plaintiff to execute and deliver to him a transfer of the claim and judgment, the said Bradford being then acting in the interest of the Texas Elevator and Compress Company, and the plaintiff when he made said transfer still believed that his said judgment had been reversed and his case remanded, but defendants still concealed from plaintiff the fact that same had been affirmed.

That at the time of the purported compromise and transfer of his claims the same amounted to $20,000, and defendant, the Texas Elevator and Compress Company, and its sureties on appeal bond, were amply solvent, and the full amount of said judgment could easily have been made by execution against them, and had plaintiff known or believed that the judgment had been affirmed, he would not have accepted in settlement less than the full amount of the same. That by reason of the fraud so practiced upon him by said defendants, plaintiff was induced to accept said $10,000, and to release and relinquish all rights to and interest in said claim and judgment. That he received no further consideration for said release and in settlement, save said $10,000.

Wherefore plaintiff prayed for judgment setting aside, annulling, and holding for naught said purported settlement and compromise, and that all receipts, releases, or transfers to said Texas Elevator and Compress Company, or to Chapman Bradford, executed by plaintiff, with reference thereto, be cancelled and annulled, and that the judgment be revived, reinstated, constituted, and established as it existed at and before said purported settlement or compromise, with all the force,

virtue, effect, rights, and liens thereto appertaining or belonging; and that said judgment then be credited as of the 8th day of July, 1890, with the said sum of $10,000. And plaintiff prayed in the alternative for judgment against said defendants for his damages in the sum of $10,000, and for costs, etc.

The defendant Chapman Bradford answered by general demurrer and general denial. The defendants the Texas Elevator and Compress Company, C. F. Carter, Royal A. Ferris, and W. White, after a general demurrer to said pleading of plaintiff, urged their special exceptions thereto; (1) because it is nowhere alleged that plaintiff, in making his settlement and compromise of the suit mentioned by him, was deceived by any of the alleged representations which he charges were made to him by defendants; and (2) because it appears from plaintiff's pleading that the means of knowledge and opportunities for intelligence in regard to the disposition of the said case, as made by the Supreme Court, were equally open and available to all the parties; and plaintiff's own pleadings show, that when he made the transfer and settlement of the judgment he acted upon his own means of knowledge, and was not deceived by defendants. And after a general denial, the said last named defendants further by way of special answer averred that at the time the judgment in favor of plaintiff, and against defendants the Texas Elevator and Compress Company, was rendered by the District Court of Dallas County, as stated by plaintiff, the firm of John T. Hardie & Co., of New Orleans, La., were then the owners of almost the entire stock of the Texas Elevator and Compress Company, which was defendant in said original suit; that shortly after said judgment was rendered in said District Court, said John T. Hardie & Co. sold all of their interest in the said Texas Elevator and Compress Company, a corporation, to the defendants herein, C. F. Carter, W. White, and one F. C. Collier, who paid full value therefor, but first exacted from John T. Hardie & Co. that the latter should protect them from liability on account of said judgment, and said parties are still the owners of the stock of the said Texas Elevator and Compress Company; and in order to secure said purchasers from liability on account of said judgment, said John T. Hardie & Co. deposited with defendant Royal A. Ferris, in pledge and for the purpose of securing said purchasers from any liability on account of said judgment, twenty bonds of $1000 each of the Texas Elevator and Compress Company, numbered from 1 to 20, inclusive, and being all of the first mortgage bonds of said company and worth $20,000, said pledge and deposit thereof being made with the agreement that they should be held by the said Ferris as security that said John T. Hardie & Co. should protect the Texas Elevator and Compress Company from any liability on account of said judgment, and also to induce the defendants C. F. Carter, Royal A. Ferris, and W. White to sign, as sureties, the super-

sedeas bond on appeal mentioned by plaintiff; and it was also agreed that said Ferris should hold said bonds in pledge and as security that John T. Hardie & Co. should protect and hold harmless the said sureties on said appeal bond from any liability on account of signing said bond; and before defendants would sign said bond they exacted of John T. Hardie & Co. that said bonds should be so pledged and deposited with said Ferris as indemnity against any liability, etc.

The said defendants specially denied all the allegations of conspiracy and fraud charged against them by plaintiff, and alleged that the transfer and settlement of the judgment mentioned by plaintiff was made without their knowledge, and that said Bradford and said Randle were in no sense the agents of these defendants in such transaction, that after the plaintiff had assigned and transferred his said judgment to the said Bradford, and after same had been released of record, that they, said defendants, permitted said John T. Hardie & Co to withdraw from the possession of said Ferris all of said bonds, and same were then delivered to said John T. Hardie & Co. by said Ferris, because these defendants believed the said judgment was in fact satisfied, and since that time they have no security whatever against liability on said bond and judgment, should said judgment be reinstated and revived. That said bonds were released to John T. Hardie & Co. in good faith by these defendants, and without any knowledge whatever that plaintiff had any cause of complaint or that he claimed anything for or on account of said judgment, and of its transfer and discharge. Wherefore these defendants averred and pleaded an estoppel against plaintiff, and that by reason of the foregoing facts the plaintiff should be held by the court to abide by the voluntary settlement and transfer of the judgment, etc.

The cause coming on to be heard on November 27, 1891, the general demurrer and first and second special exceptions of the defendants, the Texas Elevator and Compress Company, C. F. Carter, White, and Ferris were presented to the court, and were overruled, to which ruling defendants then excepted; and a jury trial resulted in a verdict against the Texas Elevator and Compress Company, and for defendants Carter, White, and Ferris. There was no finding by the jury as to the defendant Chapman Bradford.

Upon this verdict judgment was entered annulling the transfer and assignment of the former judgment by plaintiff to Bradford, and reestablishing and constituting same as affirmed by the Supreme Court, less a credit of $10,000, paid as of July 8, 1890, and awarding all costs against the Texas Elevator and Compress Company. The elevator company alone appeals.

The conclusions of fact in support of the verdict and judgment are as follows: On May 18, 1887, appellee, T. B. Mitchell, obtained judgment in the District Court of Dallas County, Texas, against appellant

for $15,200, with 8 per cent interest, and costs. The Texas Elevator and Compress Company appealed to the Supreme Court. At that time John T. Hardie & Co., of New Orleans, La., owned most of the stock in said elevator company. In order to make the appeal bond, the parties interested deposited with N. A. McMillan, cashier of the National Exchange Bank, at Dallas, twenty of the first mortgage bonds of said elevator company in order to secure and indemnify C. F. Carter, W. White, and Royal A. Ferris, who signed the appeal bond in said case, which was for about $35,000. Said case was duly heard in the Supreme Court, and about June 25, 1890, the said cause was affirmed. On June 25, 1890, the Dallas Morning News reported that said cause had been reversed and remanded. On June 26, 1890, said Mitchell, who had been absent, returned to Dallas, and was informed by his friends that the case had been reversed and remanded, and was so reported in the newspapers. He inquired of one of his attorneys, and was informed that the mandate of the Supreme Court would be sent down in a short time. As soon as the report of the case was made in the Dallas News, on June 25, 1890, Colonel W. W. Leake, one of appellant's counsel, wrote to John T. Hardie & Co., informing them that the case was reversed and remanded, but a few days later he learned of the mistake in the report in the News, and again wrote to John T. Hardie & Co., that the case was affirmed.

Chapman Bradford, of Dallas, was a nephew of John T. Hardie, and prior to this was agent and attorney for John T. Hardie & Co. By July 7, 1890, he had procured a copy of the opinion in the case, and knew the judgment was affirmed. On July 8, 1890, he procured T. L. Randle, a broker in Dallas, to go to Mitchell and buy the judgment for $10,000, which at that time was about fifty cents on the dollar.

The facts proved and the verdict and judgment thereon justify the conclusion in support thereof, that Randle in making the purchase informed said Mitchell that the judgment had been reversed and remanded, and that said Mitchell, induced by this information, made the sale, which he would not have made had he known the real facts.

That before closing the trade with Bradford, and while Bradford was writing the transfer, Mitchell asked him if there was anything new about the case, and he made no reply, but kept on writing. He knew that Mitchell was making the sale under the mistaken impression that the judgment was reversed and remanded, and although he had in his possession at that time a copy of the opinion of the Supreme Court affirming the judgment, he did not reveal to Mitchell the real facts, and the broker who negotiated the purchase actually used it as a fact, that the judgment was reversed and remanded. The transfer of the judgment was made to Chapman Bradford, July 8, 1890. In making payment for the transfer, Bradford drew a draft for the amount of $10,275 on John T. Hardie & Co., through the bank of Flippen, Adoue & Lo-

bit, which was placed to his credit (less exchange), and upon this he gave Mitchell a check for $10,000.

On July 16, 1890, Bradford exhibited the transfer of the judgment to the clerk of the District Court of Dallas County, and procured him to note on the margin of the judgment that it had been transferred to him, and within a day or two he receipted the record in full, procured the clerk to make a certificate of that fact, which certificate he exhibited to Carter, White, and Ferris, and they signed an order on Mc-Millan to deliver to Bradford the twenty first mortgage bonds of the elevator company deposited to secure them as sureties on the supersedeas appeal bond. The first mortgage bonds were delivered to Bradford on the order, and were by him delivered to John T. Hardie & Co.

The Texas Elevator and Company was the beneficiary of the transfer made by Mitchell to Bradford, and although the transfer was in the name of Bradford, he had no beneficial interest in it, but was only acting as agent.

*Opinion.*—1. No complaint is made of the judgment by Bradford, White, Ferris, or Carter, and the Texas Elevator and Compress Company is the only party to the appeal.

The first assignment of error presented is as follows: "The court erred in overruling this defendant's general demurrer to plaintiff's second amended original petition, and also erred in overruling this defendant's special demurrer to said pleading; because said second amended original petition does not sufficiently allege that the plaintiff, in making his settlement and compromise of the suit mentioned by him, was deceived by any of the alleged representations, nor does it sufficiently aver that the means of knowledge and opportunities for intelligence in regard to the disposition of plaintiff's suit in the Supreme Court were not open and available to plaintiff as much as to the defendants; and said pleading shows that plaintiff, when he made the transfer and settlement of the judgment, acted upon his own means of knowledge, and was not deceived by this defendant; and in overruling said demurrers pointing out such defects the court erred."

This assignment presents a general demurrer and several different special demurrers under one assignment. The practice is questionable. Paschal v. Owen, 77 Texas, 583. But waiving the question of practice, we think the pleading is amply sufficient. The plaintiff's second amended original petition declares upon a fraudulent conspiracy on the part of the defendants to cheat and defraud plaintiff, and that through their agents they represented to him that the judgment he had obtained against appellant had been reversed and remanded, when in fact it had been affirmed; that the representations were false; that they knew their falsity, and that plaintiff relied upon them and was thereby induced to make the sale, which he would not

have otherwise done. If the facts as set out in plaintiff's pleadings be true, it was the very "refinement of fraud."

It is virtually assumed for appellant, that because appellee had already been misled and deceived by the publication in the newspapers to the effect that his case has been reversed, it was no harm to take advantage of his condition by declaring that state of facts to be true, and stripping him of his property. The rule of decision in this State, as well as at common law, has always been broad and liberal in allowing the utmost freedom in negotiation, short of the perpetration of actual deceit and fraud. Upon the question of mistake of material facts, Mr. Story says: "Nor is it in every case, where even a material fact is mistaken or unknown without any default of the parties, that a court of equity will interpose. The fact may be unknown to both parties, or it may be known to one party and unknown to the other. If it is unknown to one party and known to the other, that will in some cases afford a valid ground for relief; as for instance where it operates as a surprise or fraud upon the ignorant party." 1 Story Eq. Jur., sec. 147.

Mr. Kent says: "As a general rule, each party is bound in every case to communicate to the other his knowledge of material facts, provided he knows the other to be ignorant of them, and they be not open and naked, or equally within the reach of his observation." 2 Kent Com., sec. 39, p. 482. The rule as laid down by Mr. Kent was adopted by our Supreme Court as early as Mitchell v. Zimmerman, 4 Texas, 79, and has ever since been adhered to. Henderson v. Railway, 17 Texas, 560; George v. Taylor, 55 Texas, 102. See also Keen v. James, 39 N. J. Eq., 527; Kerr on Fraud, pp. 98, 100.

2. It is further contended, that the petition is defective in failing to tender back the $10,000 received by appellee. This contention might come with a better grace from Mr. Bradford, who claims to have paid it. He has not appealed from the judgment. If appellant furnished the money, it is fairly credited on the judgment as a payment; if appellant did not furnish the money, it certainly ought not to complain at the benefit conferred in getting a credit for that amount. The judgment was a valid lien upon appellant's property, and the credit has certainly extinguished the debt to that extent. We see no ground upon which appellant can complain of this. Burns v. Ledbetter, 54 Texas, 383; French v. Grenet, 57 Texas, 280.

3. Appellant's second assignment of error is as follows: "The court erred in overruling defendant's objections to the evidence of plaintiff, to the effect that one F. L. Randle stated to him (plaintiff), while negotiating with plaintiff for a settlement and compromise of plaintiff's judgment, that he (Randle) was representing the Texas Elevator and Compress Company, because there was no testimony tending to show that said Randle was in any way connected with the said Texas

Elevator and Compress Company, defendant, and his statements and conversations not in the presence of this defendant could not be heard against this defendant, because there has been no testimony tending to establish any conspiracy between this defendant, Texas Elevator and Compress Company, and any other defendant in the case; which error of the court fully appears from defendant's bill of exceptions number 1."

The third and fourth assignments of error raise the same question in different forms. The propositions of law contended for by appellant are, that agency can not be proved by the declarations of the agent alone, and that before the declaration of one coconspirator can be used against another, the conspiracy, as a general rule, must be shown by other evidence, and can not be proved by such declarations alone.

These propositions are not without ample authority to support them, but we do not think they are applicable to this case. When F. L. Randle, as a broker, went to appellee to buy the judgment, he (appellee) testified that he did not claim to be acting for himself, but for another. That he stated to appellee who his principal was; that he claimed to be acting for the appellant, Texas Elevator and Compress Company. This alone would not be sufficient to prove such agency. But it is a circumstance which, taken in connection with the other testimony—that when John T. Hardie & Co. were notified of the disposition of the case, a copy of the opinion of the Supreme Court was promptly procured by Bradford, the agent of Hardie & Co., and the negotiation and purchase made with money furnished by a draft on them; that Bradford, after making the purchase, actually receipted the record and released the judgment against appellant, without money and without price, so far as the record discloses; that the twenty first mortgage bonds upon appellant's property, which had been deposited with McMillan, were speedily released and sent to John T. Hardie & Co., in New Orleans—all tended to show that Randle was making the purchase for the elevator company.

If Randle was not acting for the company, but for Bradford, as appellant claims, and he is not the owner of the judgment, and the testimony was illegally admitted, and his transfer illegally set aside, Bradford is not complaining, and it is difficult to see how appellant has been injured thereby, it having (as it claims) no community of interest with him.

But the principle is well settled, that if a fraud was in fact perpetrated upon appellee by the parties making the negotiation, and the benefits of such fraud accepted by appellant with a knowledge of the fraudulent acts, such beneficiary can not be heard to deny the agency. Brown v. Bridges, 70 Texas, 664, 665; Meacham on Agency, secs. 148, 151. In any event, under the facts of this case, if Randle was appellant's agent, no harm could come to it from the declarations; if he

was not its agent to make the contract, and the appellant has parted with no consideration, it can not be heard to complain. Under the facts, the elevator company being the only party to this appeal, and not having paid out a dollar, according to its own theory, it is in no condition to complain of this ruling. The question of agency becomes an immaterial fact so far as the result of the case is concerned.

4. The fifth assignment of error is as follows: "The court erred in so much of its charge to the jury quoted as follows: 'If, from the evidence before you, you believe that the Texas Elevator and Compress Company, by Chapman Bradford, sent one Randle to Mitchell to purchase this judgment, and you find and believe at the time that Bradford, representing said compress company, knew at the time that the information contained in the Dallas Morning News of June 25, 1890, was not true, but that in fact the Supreme Court of Texas had affirmed said cause, and that this fact was unknown to Mitchell, but that Randle urged as a reason for selling the judgment that it had been reversed by said Supreme Court, and but for these representations Mitchell would not have sold, and the sale and transfer was made under these circumstances, then by your verdict you should find for the plaintiff against said elevator and compress company.' Because said charge assumes that there was legitimate evidence to show that Bradford represented the Texas Elevator and Compress Company in the purchase from plaintiff of his judgment; and because said charge assumes that the relation between Bradford and Mitchell in that transaction was such as to impose upon Bradford a fiduciary relation, and a relation of trust and confidence towards him on the part of Mitchell, and that Mitchell had a right to rely upon representations made to him by Bradford and Randle."

The only two points alleged against it are, (1) that it assumes that there was legitimate evidence to show the agency of Bradford; and (2) that it assumes that there was a fiduciary relation between Bradford and Mitchell, giving the latter a right to rely upon the representations of the former. These positions are not believed to be sound. In the first place, we think there was legitimate evidence tending to show the agency of Bradford. In the second place, it is not necessary that there should be a fiduciary relation between the parties to a transaction before a court of equity will give relief against an actual fraud.

It may be true that appellee did believe from the publication in the News, and from what his friends told him of such publication, that the case had been reversed; but if appellant, by its agents, took advantage of this fact, knowing the impression made upon Mitchell by such publication, knowing that he believed such to be the fact, but also knowing that this was not true, and by fraudulent representations, or fraudulent concealment of the facts when asked about them, induced appellee to make the sale which he would not otherwise have

done, such acts constituted in law a fraud, without regard to fiduciary relations. If the charge was not as full as appellant desired, additional charges should have been requested.

Aside from this view, we think that a fair construction of the language of the charge leads to the conclusion that the court did not assume these particular facts to be true, but submitted them to the jury as legitimate issues of fact to be determined by them. But if it should be conceded that the court did assume that there was legitimate evidence to show that Bradford was the agent of appellant, as contended for in its objection to the charge, still, this being an immaterial issue in the cause, it could not change the result, and would be harmless.

5. The seventh assignment is covered by the discussion of the points above.

6. The sixth assignment of error is as follows: "The court erred in refusing to permit defendant, the Texas Elevator and Compress Company, to prove by W. White and C. F. Carter, that the twenty first mortgage bonds of the original Texas Elevator and Compress Company had been deposited with the vendees of the stock of said company, after plaintiff had obtained his original judgment, to protect said vendees and the lands of said company from the lien of plaintiff's said judgment; which error of the court is fully disclosed in this defendant's bill of exceptions number 3, herein filed, and which error was pointed out to the court by this defendant in the second ground of this defendant's motion for a new trial."

(1) By reference to the bill of exeptions number 3, it is shown that appellant offered to prove by White and Carter, that about the time the appeal bond was signed, John T. Hardie & Co. sold their stock in the Texas Elevator and Compress Company to C. F. Carter, F. C. Collier, and W. White, and deposited with them, as indemnity against the judgment, twenty first mortgage bonds of said company, worth $20,000. What they did with such bonds, the bill of exceptions does not disclose. The relevancy of the evidence is not made apparent, either by the bill of exceptions or by the assignment.

(2) Neither Carter, Collier, nor White are parties to this appeal, and if they were injured by not being allowed to prove the above alleged facts, they are making no complaint. So far as appellant is concerned, it is not claimed that it was a party to the above transaction, which was between stockholders, and in which the company had no part. The issue does not concern appellant, even if it was error.

(3) The testimony was irrelevant and immaterial under the allegations in appellant's answer, which practically adopts the acts of Bradford in obtaining the transfer and claiming a release by reason of the receipt of record filed by him. It can not claim a release by reason of rights accruing to a part of its stockholders individually—a fortiori, where the bill of exceptions fails to show what they did with the

bonds.   Savings Bank v. Sachtleben, 67 Texas, 421; Longley v. Stage Co., 23 Me., 39.

7.  The ninth assignment is as follows:  "The court erred in cancelling and setting aside the assignment of the judgment by Mitchell to Bradford, because such judgment was outside of and unsupported by the verdict, because there was no finding by the jury for or against Bradford, and as the right of this defendant to be released from plaintiff's original judgment was derived from Bradford, so long as the assignment of the judgment to Bradford was in force no decree could be rendered against this defendant cancelling and setting aside the assignment and release of said original judgment."

(1)  Bradford is not a party to this appeal, and is not complaining of the judgment against him.   If that judgment was rendered without any verdict, he alone can take advantage of it.

(2)  Even if this were error, it does not concern appellant.

(3)  Bradford, if only a formal party, need not necessarily be included in the verdict, and no recovery being asked or taken against him further than a cancellation of the transfer and the release which he claimed to have made, and in his pleadings having practically disclaimed, the judgment was not erroneous.   Railway v. James, 73 Texas, 18; Pearce v. Bell, 21 Texas, 691.

We think the judgment is supported by the evidence, and that substantial justice has been reached.

The judgment is affirmed.

*Affirmed.*

Delivered April 18, 1894.

Writ of error refused by the Supreme Court.