### HERMAN LOEB v. CROW & HICKEY.

Delivered March 25, 1897.

**1. Attachment—Liquidated Demand—Sale of Goods.**

A claim for the price of goods sold at an agreed price, with a credit admitted, is one for liquidated damages, which will support an attachment.

**2. Sale of Cotton—When Complete.**

A sale of cotton is complete and the title passes when the particular bales are designated and the price per pound is agreed upon, and it remains only to present to the vendee invoices giving marks and weights.

**3. Agency—Evidence.**

Evidence is admissible that one claimed to be the agent of another, and acted as such, after the fact of agency has been shown by other evidence.

**4. Evidence—Sale of Cotton—Completion.**

On an issue as to the completion of a sale of cotton, evidence is admissible that it is customary to accept the weigher's receipts as showing the weights, unless otherwise stipulated.

**5. Jurisdiction—Non-resident—Answer.**

When a non-resident defendant answers to the merits "solely in the event that the court shall overrule his plea to the jurisdiction," and the plea to the jurisdiction is overruled, the court acquires jurisdiction of his person.

APPEAL from Rusk. Tried below before Hon. W. J. GRAHAM.

*Frank J. Looney* and *Buford & McDavid*, for appellant.

*N. B. Morris* and *J. H. Turner*, for appellees.—When the sale has been properly made, as in this case, the claim becomes a certain demand or debt, which the party has impliedly obligated himself to pay. In all such cases attachments will lie. Hotchstadler v. Sam, 73 Texas, 318; Grabenheimer v. Blum, 63 Texas, 376; Stiff v. Fisher, 2 Texas Civ. App., 349.

WILLIAMS, ASSOCIATE JUSTICE.—Appellees sued appellant for the price of 290 bales of cotton alleged to have been sold by them to appellant at 8½ cents per pound, amounting to $12,663.63, less a credit of $11,546.25 admitted in the petition, leaving the balance sued for of $1,161.15. The petition alleged, as is the fact, that appellant was a non-resident of the State, and prayed for an attachment. Bond and affidavit having been filed, the writ was issued, and levied upon cotton in the State belonging to appellant, which was replevied by him.

At the first term of court appellant filed on the same day: (1) A motion to quash the attachment, because of alleged defects in the bond and affidavit. (2) A plea styled a plea to the jurisdiction, alleging defendant's residence and citizenship in Louisiana; that he had never been served with citation in this State; that the attachment issued was void, because the suit is not for a debt which would sustain such a writ, but for unliquidated damages for breach of contract, as would appear from the evidence of plaintiff; for which reasons the defendant denied the jurisdiction of the court over him. (3) A plea containing exceptions to the petition, and a general denial.

At the beginning of the two first named pleas, it is stated that defendant answers "solely and only for the purpose of objecting to the attachment by which his property was taken and pleading to the jurisdiction of the court, and not for the purpose of submitting to its jurisdiction." At the beginning of the third plea, it is stated that defendant answers "solely in the event that the court shall overrule his plea to the jurisdiction, and not intending to submit himself voluntarily to the jurisdiction, but being forced to do so by the order of the court."

The court overruled the motion to quash the attachment and the plea to the jurisdiction, and tried the case on the merits, rendering judgment for plaintiffs.

The facts of the case are stated in the findings of fact of the trial judge, which are sustained by the evidence as follows: "That J. W. Welborne was the agent of the defendant, Loeb, for the purpose of buying cotton at Henderson and Overton, Texas, in October, 1895. That as such agent he on the 18th day of October, 1895, and before 2 o'clock p. m. of said day, purchased from the plaintiffs the 290 bales of cotton described in their petition, and agreed to pay 8½ cents per pound for same, and that he had authority as such agent to make said purchase. That said agent was to pay for said cotton on the following morning upon presentation of invoice of cotton, giving the marks and weights. That there was no tender of the cotton except by invoice, and I find that no other tender or delivery of the same was contemplated by the parties to the contract. That a tender by plaintiff was made, according to the terms of the contract, to said agent on the morning of the 19th of October, 1895, and that he refused to pay for same. I find that plaintiffs complied with all the terms of the contract on their part. That plaintiffs, after said agent refused to pay for same, notified defendant, at Shreveport, of the sale of the cotton by them to his agent, and asked instructions as to what should be done with the cotton, and stated that they would sell same for his account, and hold him liable for amount it should fall short of the price he agreed to give. That defendant failed to give any instructions and denied any liability, saying that Welborne had no authorithy to buy. That, within a reasonable time, they sold same for the best price they could get, and that could have been gotten in this market, and under the unsettled condition of the market at the time they sold and for sometime thereafter, it was business prudence; and the proper thing to do was to sell in this market. That the amount sued for is the amount short of what they should have received at the agreed price. That Welborne had special instructions from defendant as to how he should buy, the number of bales daily, and the price he should pay. That these instructions were private, and were not intended that they should be known to others than the parties thereto. That plaintiffs did not know of such instructions, but acted upon the belief that Welborne had authority to buy the cotton, and I find that the relations between defendant and Welborne justified them in such belief. I find that they did not have knowledge of any fact which, if pursued with reasonable and business prudence on their part, would have led to a knowledge of the actual relations between defendant and Welborne. I further find that previous to Welborne buying the cotton from plaintiffs, he had been acting as the agent of the defendant in the purchase and effort to purchase cotton for defendant at Henderson and Overton, Texas, and that these facts were known to the plaintiffs. I find that the act of Welborne in purchasing the cotton from plaintiffs was clearly within the apparent scope of his authority as agent of the defendant."

The first assignment claims that the action was one for unliquidated damages, in which an attachment would not lie, and hence the court

acquired no jurisdiction, and should have dismissed the cause. The petition presented a claim for the price of goods sold, at an agreed price, with a credit admitted. This was not an unliquidated claim. Upon the case stated, the plaintiffs were entitled to the price for which the goods were sold, less the price realized at the resale of the cotton. In cases of such sales, where the vendee refused to accept the goods, the vendor has several remedies, one of which is to treat the property as that of the vendee and sell in enforcement of his lien for the price after giving proper notice; and this is what plaintiffs allege and prove they did. The exact amount to which they were entitled was thus ascertained, and they were entitled to an attachment upon complying with the law. If the proof had shown nothing but an executory contract of sale, there would have been a variance from the allegations; but we think the proof was sufficient to sustain the finding that there was a complete sale of particular cotton, the title to which passed, and which plaintiffs therefore were entitled to treat as the property of defendant. The transaction does not belong to that class in which the seller agrees to furnish, at a future time, articles not specified and appropriated to the contract, but to be selected out of the mass of property of the same kind to be obtained in the markets. In this kind of a transaction no title passes at the time of the contract, and hence the seller is not entitled to the price, if the vendee repudiates the agreement before delivery of the specific articles, but only to damages for the breach. The case here is different, as we have pointed out.

We discover no defect in the bond or affidavit for attachment, and none is specified.

Testimony that Welborne claimed to be and acted as agent of defendant was admissible, the fact of agency being shown by other evidence.

Evidence that in sales of cotton it was customary to accept the weigher's receipts as showing the weights, unless otherwise stipulated, was admissible. The correctness of the weights in question was made reasonably apparent by other evidence, but this custom could properly be considered, as a circumstance showing the completeness of the transaction.

The other assignments are all disposed of by what we have already said.

As the attachment was legal, we hold that the pleadings filed by defendant, under our statute, gave the court jurisdiction over his person. Whether this would be the effect of such pleadings, where the property was unlawfully attached, and the defendant only sought to have it released, without submitting himself voluntarily to the jurisdiction further than that, we do not decide.

*Affirmed.*