## LANG FLORAL & NURSERY CO. v. SHERIDAN. (No. 8650.)*

(Court of Civil Appeals of Texas. Dallas. May 6, 1922. On Motion for Rehearing, June 17, 1922. On Second Motion for Rehearing, Nov. 4, 1922. Further Rehearing Denied Dec. 2, 1922.)

**1. Evidence ⬅123(1)—Statement not rendered inadmissible as "res gestæ" by passage of time.**

The fact that some time may have elapsed between the actual occurrence and the use of the language, the narrative of which is objected to, does not necessarily render it inadmissible as res gestæ, it being sufficient that they spring out of the occurrence to which they relate and are voluntary and spontaneous and made at a time not so far from the happening to which they relate as to preclude the idea of their being deliberate and designed.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Res Gestæ.]

**2. Evidence ⬅118—Statements in response to questions res gestæ.**

A statement is not rendered inadmissible as res gestæ because made in response to questions.

**3. Evidence ⬅123(11)—Statement held admissible as res gestæ.**

A statement made by driver of automobile that he was returning from making a delivery for his employer, made as soon as the witnesses could come from a house in front of which the accident occurred, was admissible as res gestæ.

**4. Master and servant ⬅330(2)—Automobile driver's statement inadmissible to agency.**

Statement of driver of automobile after accident that he was returning from making a delivery for his employer was not, taken alone, admissible as proof that he was his employer's agent, engaged in the discharge of any duty of his employment at the time of the accident.

**5. Evidence ⬅243(4)—Admissions of servant not binding on employer.**

If a statement of an automobile driver after an accident, that he was returning from

making a delivery for his employer, be considered merely in the nature of an admission, it could not be taken as an admission binding upon the employer.

**6. Evidence ⬤⟳123(11)—Statements held inadmissible as res gestæ.**

A statement made by driver of automobile several hours after the accident to the effect that he was making deliveries for his employer and was engaged in the discharge of his duty as employé at the time of the accident was not admissible as res gestæ.

**7. Master and servant ⬤⟳303 — Automobile dangerous instrumentality in hands of incompetent driver.**

While an automobile is not inherently a dangerous instrumentality, and its owner is liable for injuries resulting from negligence committed in the use of it by a servant only under the maxim "respondeat superior," an exception to this rule of liability arises when he entrusts it to a person so lacking in competency and skill as to convert it into a dangerous instrumentality when used by such person, whose incompetency is known to the owner when he permits him to use it.

**8. Appeal and error ⬤⟳1004(1)—Verdict assessing damages not disturbed in absence of bias or prejudice.**

On appeal from a judgment for damages in personal injury action, unless the reviewing court can say that, in the light of the material evidence adduced in behalf of plaintiff, the amount of the judgment is such as to indicate that it is the result of bias or prejudice or improper sympathy rather than deliberation upon the facts, it cannot disturb it.

**9. Damages ⬤⟳132(6)—$3,000 held not excessive for crippled leg.**

It could not be said that a verdict of $3,000 was the result of bias or prejudice where the injured person was confined to his bed for five weeks by reason of a permanently injured leg and knee.

*On Motion for Rehearing.*

**10. Master and servant ⬤⟳330(3) — Evidence held not to show automobile owner permitted inexperienced driver to use car.**

In an action for personal injuries when run down by automobile driven by defendant's servant, evidence *held* not to sustain a finding that defendant through its responsible vice principals and agents permitted the servant to take the car upon the public highways and operate it, knowing at the time that he was without the skill and experience safely to drive any character of automobile, so as to render its automobile a dangerous instrumentality.

*On Second Motion for Rehearing.*

**11. Master and servant ⬤⟳330(1)—Ownership of negligently driven automobile prima facie evidence of liability shifting burden of proof.**

When the defendant's ownership of an automobile is proved in connection with proof establishing that injuries resulted from its being negligently driven by a servant of the defendant, a prima facie case is established and the burden is upon the defendant to prove that the servant was not acting within the scope of his employment when he negligently inflicted the injuries.

**12. Master and servant ⬤⟳330(3)—Evidence held to show automobile driver was within scope of employment.**

In action against automobile owner for injuries on highway, evidence *held* to sustain finding that defendant's servant while driving the automobile was acting within the scope of his employment.

Appeal from District Court, Dallas County; W. F. Whitehurst, Judge.

Action by Pat Sheridan against the Lang Floral & Nursery Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Crane & Crane, of Dallas, for appellant. Currie McCutcheon, of Dallas, for appellee.

HAMILTON, J. This was an action for the recovery of damages for personal injuries alleged to have been inflicted by reason of negligence.

On July 23, 1919, appellee was riding on horseback in an easterly direction on a public road, when an automobile belonging to appellant and at the time driven by T. G. Browning, appellant's employe, struck the horse from the rear. When the automobile struck the horse he fell and pinned appellee's right leg underneath his body. The road was built of concrete, but along the side of it ran a gravel pathway on which appellee was riding at the time he was struck by the automobile driven, as aforesaid, by Browning, appellant's employé. The portion of the road where the accidnt occurred was not used for automobile travel, such vehicles being operated upon the concrete portion of the road, and it seems that either the inexperience or the carelessness of Browning accounts for the automobile running off the concrete portion of the road and striking the horse. The accident resulted in the following injuries to appellee: A gash was cut in his right knee about four inches long, the cut extending to the bone and severing the ligaments, muscles, tissues, nerves, arteries, etc., in that portion of appellee's leg; the joint was bruised; the great toe of his right foot was seriously bruised and injured; he was also slightly injured in the shoulders and other parts of his body. As a result of the injuries appellee suffered great pain for a period of about five weeks, and it was necessary that the wounds be dressed and treated daily during this period.

Appellee was confined to his bed about five weeks as a result of his injuries. After this he went on crutches for about the same length of time. After discarding the crutches he used a cane for two or three weeks. Occasionally he suffered some pain in the crip-

pled leg and knee until the date of the trial, which was January 11, 1921. According to the testimony of the physician who attended him, which is not controverted, he will have more or less pain in the joint of his knee at intervals during the remainder of his life, especially when he subjects it to unusual exertion. Before the injuries, appellee was physically sound and robust.

Appellee was a laborer at the time of the accident, and was engaged as a feeder and milker at a dairy. He was receiving a salary of about $100 per month for his labor at the time of the accident. The record does not definitely disclose how long his disablement incapacitated him to work, but we gather from the evidence as a whole that he began his labors again about three months after he received his injuries. There is no proof as to how much he received for his work at the dairy after he resumed work. In the fall of 1919 he removed to Hood county and purchased a farm, which he had been living upon and cultivating from the date of purchase until the time of the trial. There he did general ordinary farm work, but he testified that he could not work continuously through an entire day at hard farm labor because of the pain it caused him to suffer in his injured leg and knee.

The petition voluminously alleges two separate theories of liability based upon negligence. The first is that the injuries resulted from the negligence of Browning while he was acting as the agent and employé of appellant, operating a motor vehicle in the course of his employment or within the general scope of appellant's business. The second is that appellant, through its vice principal and acting head, knowingly permitted Browning, an employé, to operate a motor vehicle upon the public streets and highways with knowledge that Browning was an incompetent and unskillful driver, and that, the accident having resulted from Browning's incompetence and lack of skill, it was attributable to appellant's negligence in permitting him to operate the vehicle under such circumstances.

The petition was answered by general demurrer and general denial. At the conclusion of the development of the case it was submitted to a jury upon special issues embodying every material question contained in the evidence.

The answers of the jury being favorable to' appellee and the amount of damages awarded being in the sum of $3,000, judgment was entered accordingly.

The case is presented to us upon numerous propositions under assignments of error which complain principally of admission of, or failure, upon appellant's motion after its admission, to exclude, testimony attacked as being objectionable, and in submitting various issues and also refusing to give, certain requested special instructions.

In the first place, complaint is made against the action of the court in refusing to instruct the jury at appellant's request to disregard certain portions of the testimony of three witnesses who testified in appellee's behalf. The objectionable portion of the testimony which appellant requested the court to exclude from the jury embodied certain purported statements of T. G. Browning, the driver of the automobile, made soon after the accident, to the effect that he was returning from making a delivery. It is insisted that the testimony was hearsay and was not a part of the res gestæ; that the purported statements were inadmissible as proof that the driver was appellant's agent because they were merely the declarations af an alleged agent, himself, which could not constitute competent evidence of agency; that the testimony was inadmissible because, conceding that Browning made such statements, his manifest purpose was to exculpate himself and put the blame of the accident on appellant, and that proof of the statement was incompetent because, even if such statements were made, they were not evidence of appellant's liability for the reason that the evidence failed to show any connection between him and appellant rendering his admissions binding upon appellant.

[1-5] The statements attributed to Browning by the witnesses who testified to them appear to have been made some time after the accident had occurred and in response to inquiries made by the witnesses who had come upon the scene of the accident. The fact that some time may have elapsed between the actual occurrence and the use of the language, the narrative of which is objected to, does not necessarily render it inadmissible as res gestæ. Incidents of an act may be separated from the act itself by the lapse of a more or less appreciable space of time and yet constitute res gestæ. It often has been held that declarations, in order to constitute parts of the res gestæ, need not be exactly coincident in point of time with the principal fact to which they are incidental. If they spring out of the occurrence to which they relate and are voluntary and spontaneous and made at a time not so far from the happening to which they relate as to preclude the idea of their being deliberate and designed, then they may be regarded as res gestæ, and this is true, notwithstanding such statements may be in response to questions. Under the evidence offered in appellee's behalf the statements testified to were made as soon as the witnesses who gave the testimony could come from a house in front of which the accident seems to have occurred, the house being situated upon the roadside, and there is nothing revealed to indicate they were not res gestæ. However we do not think the testimony, taken alone, was admissible as proof that Browning was appellant's agent, engaged in the discharge

of any duty of his employment at the time of the accident. Furthermore, if the statements are to be considered merely in the nature of admissions by Browning, then they could not be taken as admissions binding upon appellant.

[6] E. A. Loupot, a witness for appellee and who was appellee's employer at the time of the accident, testified that Browning brought appellee back to the dairy owned by Loupot and at which appellee was employed. He testified that this was in the night following the accident, which occurred in the early evening or afternoon, and that in a conversation there with Browning the latter stated, in answer to a question, that he was on duty at the time he injured the appellee, he having made a call in West Dallas. Appellant objected to this testimony on the ground that it was hearsay and incompetent to prove authority, or the scope of authority. The admission of the evidence over appellant's objection is complained of by appellant.

This conversation, granting that it occurred, and that the statement was made, in point of time, evidently was several hours after the accident itself. Appellee had been taken to the hospital in Dallas and his wounds treated by a physician, and had been conveyed by Browning back to his place of employment. Such being true, we think it manifest that the testimony was not admissible as res gestæ.

Appellee contends that the testimony of the three witnesses who testified as to the substance of statements made by Browning after the accident and the testimony of Loupot as to the statement made to him by Browning was admissible to impeach Browning who, in his own testimony, denied making any of the statements attributed to him.

We do not think any of this evidence was admissible for impeachment purposes because whatever statements Browning made at the time of the accident were immaterial as a sole basis for fixing liability against appellant. Statements of one admitting his agency are in themselves incompetent to prove it under such conditions as appear to have surrounded Browning at the time. We find no evidence whatever tending to prove that Browning was acting under the authority of appellant at the time of the accident or within the scope of his employment, aside from the proof of the statements ascribed to him by appellee's witnesses. The positive, uncontradicted direct testimony is that he was not acting within the scope of his employment. There appearing to be an entire absence of prima facie proof of such agency, we do not think Browning's declarations can be given the effect accorded them by the trial court, as reflected by the record.

We do not think the evidence sufficiently establishes essential facts to support the theory of appellant's liability, because Browning was acting as its agent when he inflicted the injuries. In fact, all the proof is that he was not acting within his employment at the time. However, eliminating all features of the case pertaining to liability on the alleged ground that the injuries were inflicted by an act within the scope of Browning's employment, and considering the case as developed and determined altogether under the allegations of negligence by reason of appellant permitting Browning, an employé, to operate its motor vehicle upon the public highways, knowing him to be incompetent and unskillful, and the accident resulting from such known incompetence and lack of skill, the judgment in our opinion ought to be sustained.

This view precludes the necessity of discussing any question presented by appellant relating to and raised in connection with the admission of evidence as to agency, and also relating to charges given and refused upon this feature of the case. Accordingly, we will not further notice any question presented in appellant's brief which attacks the findings of the jury and the judgment of the court on the ground that the record discloses no liability based upon respondeat superior.

J. C. Walvoord was in active charge of appellant's business when the accident occurred and had been some time previous thereto. Ed Broyles had charge of the garage from which the automobile was taken by Browning. Walvoord at the time had the unrestricted management and control of appellant's business. Broyles had charge of the garage in which appellant kept all its automobiles and had charge of all the vehicles stored therein, including that taken by Browning. Previous to taking it, Browning sought permission from Walvoord to use the automobile. On the occasion of Browning's asking for permission to use the car a conversation took place between him and Walvoord concerning Browning's inexperience in driving automobiles. The testimony concerning this conversation indicates that Walvoord was then under the impression that Browning did not know anything about handling an automobile. The information imparted to Walvoord by Browning in this conversation was not reassuring on this point. When Browning requested Walvoord to permit him to drive the automobile, Walvoord asked if he knew how to drive. Browning in answer said, "Yes; I can drive them all right." To this Walvoord replied that he did not know Browning could run an automobile. Browning then stated that he had run them several times and said, "Of course, I am not an expert driver but I have driven. I have run an automobile." Thereupon Walvoord replied, "Well, if you can run an automobile all right, go ahead out there and see if you can get one of those trucks."

Browning went to the garage on Ross avenue in Dallas and got the automobile which he was driving when the accident happened. Walvoord testified that he thought Browning was just learning to drive an automobile, that he knew he was an inexperienced driver and that he understood from Browning that Browning could not stop the car like an expert and probably did not know what to do or how to stop it. He also stated that he knew Browning did not properly understand how to drive an automobile. When Browning went to get the automobile, Broyles, who was in charge of it and also of the garage in which it was stored, inquired of Browning what he was going to do, and Browning answered that he was going to "spin around some." It does not appear from the evidence just what further conversation took place between Broyles and Browning, but the testimony supports the conclusion that the automobile was taken with Broyles' assent, if not with his express permission.

Under the circumstances, whether Broyles permitted or only allowed Browning to take the automobile, we think, does not affect the question of liability. The evidence supports the conclusion that Walvoord, knowing Browning was inexperienced and unskilled in driving automobiles, or at least was without sufficient experience and skill to render an automobile driven by him upon a public highway free from danger to others lawfully using the highway, gave him express permission to use one of appellant's cars. When Browning went to the garage to take the vehicle out Broyles acquiesced in the taking and, we think, his conduct on that occasion was tantamount to authorizing the use of the automobile by Browning. Broyles' conduct, whether or not it be said that he merely allowed rather than permitted Browning to take the automobile, was such under the record as to support the finding that Browning used it with his authority.

[7] While an automobile is not inherently a dangerous instrumentality, and while the general rule prevails that its owner is liable for injuries resulting from negligence committed in the use of it by a servant or agent only under the maxim "respondeat superior," an exception to this rule of liability arises when he entrusts it to a person so lacking in competency and skill as to convert it into a dangerous instrumentality when used by such person, whose incompetency is known to the owner when he permits such person to use it. Applying this principle to the evidence, the finding of liability is sustained on the ground that appellant, through its responsible vice principals and agents, permitted Browning to take the car upon the public highways and operate it, knowing at the time that he was without the skill and experience safely to drive any character of automobile.

As above stated, appellant's liability does not rest upon the ground of its responsibility for the negligent conduct of Browning but upon its own negligence in the first instance comprehended in rendering its automobile a dangerous instrumentality by putting it into Browning's control as a driver on the public thoroughfare with knowledge of the danger which existed by reason of his inexperience and unskillfulness. Gardiner v. Solomon, 200 Ala. 115, 75 South. 623, L. R. A. 1917E, 380; Huddy on Automobiles (5th Ed.) 355; Texas Co. v. Veloz (Tex. Civ. App.) 162 S. W. 377.

In the case of Texas Co. v. Veloz, supra, an automobile which belonged to appellant was delivered by appellant's agent to a third person, with knowledge that it was in bad repair because a tire had been punctured and also because it was unmanageable on account of a defect in the carbureter and the steering gear. While it was being driven in this condition on a public road, it collided with an automobile owned by Veloz. It was held that the Texas Company was liable for the injuries resulting from the collision caused by it while it was being driven by a third person, on the ground that the agent was negligent in permitting it to be driven on a highway in such condition. That case we think can be said to be analogous to the instant case. In that case the automobile would have been a dangerous instrumentality in the hands of any person on account of its condition. In this case any automobile would have been a dangerous instrumentality driven by Browning because of his incompetency.

[8, 9] Appellant complains that the judgment of the trial court is excessive, and cites numerous authorities to sustain that view. We have been doubtful as to the propriety of permitting the judgment to stand without requiring a remittitur. Unless we can say that, in the light of the material evidence adduced in behalf of appellee, the amount of the judgment is such as to indicate that it is the result of bias or prejudice, or improper sympathy, rather than deliberation upon the facts, of course it is not our province to disturb it. The amount of damages to be awarded in a case is as much within the province of the jury as the determination of any other issue of fact, and we are as much without authority to substitute our judgment for that of the jury in this respect as we are with reference to any other issue of fact, provided it does not reasonably appear to be based upon, or influenced by, something besides substantial evidence. We do not believe the evidence necessarily establishes that the amount of the judgment is excessive and have reached the conclusion that the award of damages made by the jury ought not to be disturbed. Accordingly we are unable to accede to appellant's request that a remittitur be required.

Believing that the record sustains the judgment, we affirm it.

Affirmed.

## On Motion For Rehearing.

[10] The judgment of this court affirming the judgment of the trial court was based upon the view that the evidence adduced at the trial was adequate to sustain the conclusion that Walvoord, appellant's manager, gave express permission to Browning to use one of appellant's cars, knowing at the time he gave such permission that Browning had no experience or skill in driving automobiles. Since the facts failed to disclose any liability based upon respondeat superior, we have rested our opinion of appellant's liability solely upon the ground of its negligence in permitting Browning to drive its automobile upon the public thoroughfares, appellant's managing agents having knowledge at the time that he was without experience or skill in operating such machine.

Appellant insists in its motion for rehearing that the facts are insufficient to sustain a judgment against appellant upon this theory, and in challenging the affirmance of the case calls attention to all the testimony bearing upon the manner in which possession of the car was acquired by Browning, and strongly argues that the testimony reveals no facts from which it can be concluded that Walvoord, appellant's manager, permitted Browning to take and drive the automobile on the day the injuries occurred.

We have again carefully reviewed the evidence and have reached the conclusion that it is insufficient to disclose that Browning was using the automobile with the knowledge and consent of any responsible agent of appellant. Our misapprehension of the facts which led to the affirmance of the case was caused by the confusing method in which Browning testified and by the failure of the parties in their briefs clearly to present the evidence given by Walvoord and Browning.

On direct examination Browning testified with reference to this feature of the case as follows:

"I think it was the Sunday before I had the accident. I am not positively sure about that, but it was that Sunday or—I know it was a little bit before I had this accident, I went by the store, and I wanted to see Mr. Walvoord but he wasn't there. I had my horse and wagon in town, and I believe I stopped my horse and wagon up on Main street at the Southwestern Building. I had to go up to the doctor's office. While I was at the doctor's office, it was Dr. Hall's office, while I was there I called up Mr. Walvoord at the Main street store. He was in, and I told him I wanted to get one of those automobiles. I wanted to carry my wife over to her mother's, over in East Dallas. Mr. Walvoord asked me if I knew how to drive and I said, 'Yes,' I could drive one all right; and he said, 'Well, I didn't know you could run an automobile;'

and I said 'I have run one several times;' and I said, 'Of course, I am not an expert driver, but I have driven; I have run an automobile;' and he said, 'Well, if you can run an automobile all right, go ahead out there and see if you can get one of those trucks.' I went out there on Ross avenue and got one of those cars, the same car I had the accident with."

On cross-examination he testified as follows:

"I did not say that Mr. Walvoord let me have this car, not that one that I had the accident with. He let me have a car before that. He just told me, 'Well, if you can drive a car, if you are a good driver, just go ahead out there and get a car.' That was a week or two before this accident."

Walvoord testified as follows:

"I talked to Mr. Browning about this accident about a week or ten days afterwards. It was a week or ten days before I heard of the accident. He told me about the accident; he told me what happened. He told me that he ran into a man and knocked him off his horse and hurt him pretty badly. He told me that it was a rainy day and that the streets were wet and slippery, that it was running on the rim on one side, on one wheel, that he had a blowout; that he had had a blowout and he kept sliding from one side of the road to the other and that he couldn't steer it good; and on account of the rain and the mist and so on and watching the back wheel, that he ran into this man, that's what he told me. He told me that he was looking over his shoulder immediately before he ran into him. I don't know that he told me he was just learning to drive, but I thought that he was just learning to drive anyhow; and that he couldn't stop the car like an expert driver and probably didn't know what to do and how to stop it. I think that's about the way he told it. I knew he was an inexperienced driver. And I knew he didn't properly know how to drive an automobile."

The evidence discloses that Ed Broyles was in charge of the garage where the automobile was kept and from which it was taken by Browning on the day of the accident. There is no evidence showing that Broyles knew anything about whether or not Browning could drive an automobile, but, even if the evidence did reflect such knowledge on the part of Broyles, still there is no evidence that his granting Browning permission to take the automobile out of the garage or allowing Browning to take it out was within the scope of his authority. We think the evidence as a whole discloses that such an act would have been beyond the scope of Broyles' authority.

The testimony above copied, being all the evidence the record contains on the proposition of Walvoord's knowledge of Browning's inexperience and all the evidence relating to permission being given Browning to operate the automobile, and such evidence being insufficient to disclose any liability, the motion

for a rehearing is granted and the cause is reversed and remanded.

Reversed and remanded.

### On Second Motion for Rehearing.

Appellee has filed a motion for rehearing which rests upon a line of authorities not cited in appellee's brief in the cause or called to the attention of the court previous to the filing of appellee's motion for a rehearing.

[11] These authorities in effect support the proposition that when a defendant's ownership of an automobile is proved in connection with proof establishing that injuries resulted from its being negligently driven by a servant of the defendant, a prima facie case is established, and that the burden is upon the defendant to prove that the servant was not acting within the scope of his employment when he negligently inflicted the injuries. The following authorities are cited in support of this proposition: Studebaker Bros. Co. v. Kitts (Tex. Civ. App.) 152 S. W. 467; Gordon v. Texas & Pacific Merc. & Mfg. Co. (Tex. Civ. App.) 190 S. W. 751; Kahn v. Home Tel. & Tel. Co., 78 Or. 308, 152 Pac. 240; Huddy on Automobiles (5th Ed.) §§ 671, 673; Ferris v. Sterling, 214 N. Y. 249, 108 N. E. 406, Ann. Cas. 1916D, 1161; Loeb v. Crow et al., 15 Tex. Civ. App. 537, 40 S. W. 506; White v. San Antonio Waterworks Co. et al., 9 Tex. Civ. App. 465, 29 S. W. 256; Missouri Valley Bridge & Iron Co. v. Ballard, 53 Tex. Civ. App. 110, 116 S. W. 99; Texas Compress Co. v. Mitchell, 7 Tex. Civ. App. 234, 28 S. W. 45; Modoc Gold Min. Co. v. Skiles, 13 Colo. App. 293, 57 Pac. 190.

An examination and application of the foregoing authorities to the facts of this case establish the conclusion that appellee's proof to the effect that Browning was driving appellant's delivery car at the time of the accident, and that he was appellant's employé, constitutes a prima facie case of liability.

[12] But, on the other hand, it may be contended that the burden of procedure thus placed upon appellant by such proof was fully met and discharged by the evidence introduced in behalf of appellant, and uncontradicted by the testimony of any witness, to the effect that no responsible agent of appellant authorized or permitted Browning to use the automobile, and to the further effect that Browning was merely "joy riding" at the time the injuries were inflicted through his negligence. In this connection we think it well to observe that the witnesses who supplied this testimony were essentially interested more or less by reason of the relations they bore to appellant. Both Walvoord and Lang were responsible officers of appellant, and Browning was not only an employé but, being the perpetrator of the act resulting in the injury, had the added interest arising from the inclination to relieve his master

from the imposition of the penalty being laid upon it for his fault and misconduct.

Furthermore, a careful re-examination of the entire statement of facts has disclosed to us evidence elicited from Browning himself by appellant while he was testifying as a witness for it, which we believe to be sufficient in connection with other evidence, presently to be noticed, to support the conclusion that he was engaged in the performance of his duties as an employé when the accident occurred. He testified that he came over from the farm that morning to the place of business of the Lang Floral & Nursery Company in Dallas with some flowers and probably vegetables and other products which he delivered there before he obtained the automobile. He then testified that after making this delivery he went to the place where appellant's automobiles were kept and, with the knowledge and acquiescence of Broyles, who had charge of them, took the car in which he was riding at the time of the accident and went directly back to West Dallas to the farm where he was employed and where he lived, and that after he arrived there he "saw after the hogs, watered them and worked around just a little bit, about half an hour or something like that." It thus appears from this testimony that Browning came to Dallas in the performance of his regular duty and directly returned to the farm for the purpose of performing a duty he owed appellant.

J. C. Walvoord, who was the acting manager of the corporate appellant at the time, testified that among other duties laid upon Browning at the farm were those of feeding and looking after hogs and other stock owned by appellant and kept at the West Dallas farm. According to this witness' testimony, Browning's duties were continuous from day to day. He testified that Browning was supposed to be on duty from the time he got up in the morning until he went to bed at night, and that on Sundays, while he was not doing much work, he was supposed to look after and feed the stock.

The above-mentioned evidence, considered in connection with Browning's res gestæ statement at the time of the accident, and in connection with the fact that he was driving appellant's automobile delivery truck, returning to Dallas where it was kept and whither it was necessary for him to return in order to obtain and bring back to the farm the vehicle in which he came to Dallas on that day and which he regularly used at the farm, is sufficient to sustain the jury's finding to the effect that Browning was engaged in the service of appellant at the time appellee received his injuries.

We therefore conclude that the judgment of the court below ought to be affirmed under the doctrine of respondeat superior. No valid contention can be made that the evi-

dence is too frail to support the verdict and judgment. Conceding that it is obscure and weak, yet we cannot say that it is altogether unsubstantial and without probative force. It is sufficient to sustain the jury's finding that Browning was acting within the general scope of his employment at the time he injured appellee.

Appellee's motion for rehearing is granted, and the judgment of the court below is affirmed.