## KANAMAN v. HUBBARD et al.

(Court of Civil Appeals of Texas. Dallas. Oct. 18, 1913. Rehearing Denied Nov. 8, 1913.)

1. SALES (§ 38*)—RIGHT OF BUYER TO RESCIND.

The right of a buyer to rescind a contract of purchase on the ground of fraud is not dependent on the existence of fiduciary relations be-

tween the parties; such relation only liberalizing or extending the general rule, and abrogating and rendering inapplicable the defense of caveat emptor.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 65–77, 85; Dec. Dig. § 38.*]

**2. SALES (§ 38*)—RIGHT OF BUYER TO RESCIND.**

Where an agent engaged in selling automobiles, to induce a dealer in automobiles to purchase a car, fraudulently caused his brother, who was unknown to the dealers, to pretend that he desired to purchase such a car, in reliance upon which fraudulent representation the dealers were induced to purchase it in expectation of reselling it to the brother, the dealers were entitled to rescind, though there were no misrepresentations as to the quality or value of the automobile, and it was substantially worth the price paid, since fraudulent representations of material facts which induce the purchase of property is ground for rescission by the buyer.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 65–77, 85; Dec. Dig. § 38.*]

**3. SALES (§ 38*)—RIGHT OF BUYER TO RESCIND.**

Where dealers in automobiles were, by fraud, induced to purchase an automobile for which they had no sale, and which they would have had to carry at their own expense and at possible ultimate loss, there was a sufficient pecuniary injury to justify a rescission, if such pecuniary injury was necessary.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 65–77, 85; Dec. Dig. § 38.*]

**4. ATTACHMENT (§ 186*)—CUSTODY OF PROPERTY—LIABILITY FOR INJURY.**

A plaintiff who causes the issuance of a writ of attachment is not liable for injuries to the attached property caused by the negligence and misconduct of the sheriff or his bailee, in which he does not participate, since, subject to defendant's right to replevy, the right of the trial court to order the property sold, and that of third persons to claim title thereto, the property is left to the exclusive control and safe-keeping of the officer, and if, through want of proper care or diligence, he allows it to be injured, wasted, lost, destroyed, or diverted to some other purpose, he is liable for the resulting injury.

[Ed. Note.—For other cases, see Attachment, Cent. Dig. §§ 600–607; Dec. Dig. § 186.*]

**5. APPEAL AND ERROR (§ 1013*)—REVIEW—QUESTION OF FACT.**

In an action wherein it was sought to recover from a sheriff damages for injuries to an attached automobile while in his custody, where no witness fixed the value of the automobile when levied upon at less than $2,300, or when sold by the sheriff at more than $850, and it sold for $743.70, a verdict against the sheriff for $553.68 was so manifestly against the evidence and so inadequate that it would be set aside on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3993–3995; Dec. Dig. § 1013.*]

**6. APPEAL AND ERROR (§ 1012*)—REVIEW—QUESTION OF FACT.**

While, if there is any evidence in the record to sustain a verdict, it will not be disturbed on appeal, if it is manifestly against the evidence or inadequate under the evidence, it will be set aside.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3990–3992; Dec. Dig. § 1012.*]

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Action by W. McK. Hubbard and others against W. I. Kanaman. From a judgment for plaintiffs, defendant appeals. Affirmed in part, and reversed and remanded in part.

Allen & Flanary, of Dallas, for appellant. K. R. Craig and Ross M. Scott, both of Dallas, for appellees.

RASBURY, J. Appellees filed suit in the court below against appellant, seeking to rescind the sale by appellant and purchase by appellees of a seven-passenger Moline automobile on the ground of fraud, and to recover the purchase price paid therefor. Ancillary to the suit attachment was levied upon the automobile at the instance of appellees by the sheriff of Dallas county, who took possession of same. Appellant answered with general demurrer and denial, and specially denied the fraud and the right of appellees to rescind the contract of purchase. Alternately, however, appellant averred that, in the event the automobile should be held to be his property, then the levy of the attachment thereon was wrongful, and that he had been injured by said levy in that the car at the time of the levy was of the reasonable market value of $2,500, but that when it was sold by order of court upon application of the appellees it only netted $743.70, due to the fact that it was injured while in the custody of the sheriff, damaging appellant thereby the difference between $2,500, its market value, and $743.70 the amount for which it was sold; as well as the further sum of $5 per day during the time he was deprived of its use. After answer by appellant appellees filed in the suit a motion against the sheriff and the sureties upon his official bond, averring the issuance of the attachment and its levy by the sheriff upon the automobile, and the taking of the same by the sheriff, who afterwards delivered it to one Chandler, as special bailee and charging the sheriff and his bailee with failure to keep and preserve same according to law, and alleging that the sheriff and his said bailee placed the car in public service as a common carrier of passengers, and rented same to other persons, receiving for its use and rental an income of $500, and injured said car as well by such use $1,500, by which the parties to the controversy suffered loss and damage in the sum of $2,000, and as a consequence the fund in the custody of the court for the security of appellees' demand or to be returned to appellant, as the case might result, suffered the loss of such amount. Appellees prayed accordingly that the sheriff and his bailee be required to pay into court said amount of $2,000, and that the appellant be notified of the motion against the sheriff, and be required to join in the prosecution of the same, or upon a failure to do so be thereafter estopped from all claims for damages against appellees growing out of the levy of the attachment

upon said property. Appellant adopted the allegations of appellees' motions against the sheriff only in the event it should be held he could not recover against appellees for the negligence of the sheriff. The sheriff and his sureties met the motion by general demurrer and denial, and specially averred that the automobile was placed in the possession of the bailee at the instance of appellees, whereby the bailee became the agent of appellees, and for whose misconduct the sheriff was not liable. Prior to trial, as alleged by appellant, the car was sold under order of court upon application of appellees, and netted at such sale the sum of $743.70.

Upon trial by jury verdict was for appellees against appellant for $2,512.75, and against the sheriff and his sureties for $553.-68. Judgment was in accordance with the verdict, and provided that any sum paid by the sheriff on the judgment against him should go as a credit on the judgment against appellant, and that appellant, in event he paid appellees' judgment against him, should be subrogated to all rights in the judgment against the sheriff.

The verdict of the jury warrants the following conclusions of facts: Appellees were engaged in Ft. Worth in the purchase and sale of automobiles, and were buying and selling the Moline cars. Appellant was state agent for the Moline car, and appellees could buy said car only through appellant. In June, 1910, appellant had in his possession at Dallas for sale a Moline car known as Moline 40, Model K, seven-passenger, and endeavored to sell same to appellees. Appellees informed appellant that, because of the absence of any general demand for such a car, they would not buy until they could first find a customer who wanted a similar car. Subsequently Roy L. Kanaman, brother to appellant, but unknown to appellees, falsely representing himself to be J. F. Adams, of Floydada, Tex., and at the instance of appellant, called upon appellees in Ft. Worth, and sought to purchase from them a car of the character described above, to be used by him in the operation of an automobile line. Appellees explained to Roy L. Kanaman, alias J. F. Adams, that they did not have such a car in stock; but if Kanaman would accompany them to Dallas they could show him such a car. Kanaman said it was unnecessary, since he had used same sort of car, and knew what it was. Thereupon appellees agreed to deliver to Roy L. Kanaman the car he desired at Ft. Worth the following morning for the price of $2,500. At Kanaman's request appellees signed a written contract to so deliver the car, and Kanaman, as an earnest of his intention to pay the purchase price, and upon demand of appellees, deposited $50 with the appellees. Immediately afterward appellees went to Dallas, and purchased the car in controversy in this litigation from appellant, paying him therefor $2,250. Roy L. Kanaman did not call the next day to receive the car; in fact did not call at all. Suspecting something dishonest in the transaction, one of the appellees went to Dallas, and, without here detailing his investigation, concluded that Roy L. Kanaman, brother to appellant, was the man who made the purchase under the alias of J. F. Adams, and, learning that he was in the vicinity of Taylor, Tex., selling automobiles for appellant, went there that night in search of him, and finally found him in a store in a small town in the vicinity of Taylor. When the appellee entered the place where Roy L. Kanaman was, Kanaman, upon seeing appellee, hastily left the place. With the assistance of the local constable, Kanaman was again found, and, when charged with buying the car, and then refusing to accept it, he laughed and denied doing so, notwithstanding appellee recognized him as the same person who purchased the car from appellees. After ascertaining that Kanaman was the same person who purchased the car, appellees returned same to appellant, at Dallas, and demanded a return of their money. Appellant said, if he was sure his brother was the man who made the pretended purchase, he would return the money, and started to write appellees a check, but reconsidered and never did so. Appellees consulted an attorney, and subsequently filed this suit, and levied attachment upon the automobile, with the result stated at another place. The amount realized from the sale of the machine and the damages awarded against the sheriff aggregate $1,297.38.

In the exercise of an abundance of industry, counsel for appellant has asserted in various ways similar propositions of law under various assignments of error, and for that reason we shall discuss the issues as such, and omit a discussion seriatim of the assignments.

[1] The first issue presented by appellant is that, there being no relationship of trust between the parties, nor any misrepresentation of the quality or value of the automobile sold, appellees were not entitled to rescission of the purchase contract. The facts in the record sustain the claim of an absence of trust relationship as well as any misrepresentation as to quality or value of the automobile. We think, however, that appellees were nevertheless entitled to rescission. Trust and confidential relations must not exist in every case to entitle the defrauded party to relief. As we understand it, such relation only liberalizes and extends the general rule and in effect abrogates and renders inapplicable as a defense in favor of the guilty party the rule of caveat emptor. In short, that the right to avoid contracts on the ground of fraud is independent of fiduciary relations, and depends, not upon such relation, but upon proof of such fraud in the manner provided by law of such fraud. Texas, etc., Compress Co. v. Mitchell, 7 Tex. Civ. App. 222, 28 S. W. 45; Varner v. Carson, 59 Tex.

303; 20 Cyc. 60. Accordingly, in our opinion, it was not necessary for appellees to allege and prove the existence of fiduciary relation between them and appellant as a condition precedent to a rescission of the purchase.

[2, 3] The next issue raised is that rescission will be denied, even though the contract was fraudulently procured, unless the party seeking rescission is able to show substantial pecuniary injury. In connection with this issue will be considered also the conceded fact that there was no misrepresentation of the quality or value of the automobile. As stated at another place, appellees alleged that appellant had been endeavoring to sell them the car in question, but that appellees declined to purchase same until they could find a customer therefor, since there was no general demand for such cars, and that afterwards appellant, contriving to defraud and cheat appellees, caused his brother, Roy L. Kanaman, to pretend he desired to purchase such a car, and that, relying upon such fraudulent representations solely, appellees were induced to purchase the car in expectation of reselling same the next day to Roy L. Kanaman, the pretended purchaser, and would not have bought otherwise. We think the fact that the car was substantially of the value paid for it by appellees unimportant, since the fraud upon which appellees seek a rescission of the purchase is not based upon misrepresentation of quality or value. The complaint, in effect, is that, in order to induce appellees to purchase the car, appellant falsely and fraudulently represented that he had a purchaser therefor. This, it occurs to us, is clearly the cause of action, and under the undisputed testimony the case stands as if appellant had himself agreed to furnish appellees a buyer at the time of the purchase. The trick by which appellees were induced to purchase the car was alone enough to avoid the contract. It has been held that representations falsely made that a third person upon whose judgment a prospective buyer relies had offered a certain price for property is sufficient to avoid the sale. Moline Plow Co. v. Carson, 72 Fed. 387, 36 U. S. App. 448, 18 C. C. A. 606. Likewise, false representations that the seller had been offered a certain price for the article sold. Strickland v. Graybill, 97 Va. 602, 34 S. E. 475. It is too well settled by our own courts to require the citation of authorities that fraudulent representations of material facts which induced the purchase of property is ground for rescission or suit for damages as the injured person may elect, and the cases cited above from other jurisdictions are more for illustration and application than otherwise. Scalf v. Tompkins, 61 Tex. 476. In the event appellees had retained the car and sued for damages, there would be some force in the claim that by keeping the car no pecuniary injury could be shown, since by the evidence the price paid therefor was no more than its market value. Here, however, it is a simple demand on the part of appellees that appellant return them the money received as a result of the deceit and misrepresentation of appellant. However, if it were necessary, in order to sustain appellees' right to rescind, to show pecuniary injury (though the cases do not employ that precise term), the pleading and testimony are ample in that respect, since it appears that by the alleged scheme appellees invested $2,250 in an automobile for which they had no sale, and which investment they would have had to carry at their own expense and at possible ultimate loss. This, it occurs to us, meets the expression of "damages" and "injury" as used in the various adjudicated cases. From what we have said, it follows that, in our opinion, the issue of pecuniary injury has no place in this case in view of the remedy sought.

[4] The next issue, raised in various ways, is that appellees are responsible for the damages inflicted upon the automobile by the sheriff while in his possession, and taken under the writ of attachment caused to be issued by appellees. As we have shown at another place, the car was injured while in the possession of the sheriff, or his bailee, without contribution thereunto by the appellees. Appellees, however, are sought to be held liable as matter of law on the ground that they are plaintiffs, caused the issuance of the writ, and therefore liable for the negligence and misconduct of the officer. In our opinion, the position is not tenable in the absence of a showing that the appellees participated in the negligent acts of the officer. McFaddin v. Sims, 43 Tex. Civ. App. 598, 97 S. W. 335. For wrongfully suing out attachment process plaintiff is, of course, directly liable to the defendant. McFaddin v. Sims, supra. And for such wrongful levy the sheriff may protect himself by demanding of the plaintiff the bond provided for by article 243, R. S. 1911, but, subject to the right of the defendant to replevy, the trial court to order it sold, and third persons to claim title thereto, the property is left to the exclusive control and safe-keeping of the officer, and if, through want of proper care or diligence, he allows it to be injured, wasted, lost, or destroyed, or diverted to some other purpose, he should be and is liable for the resulting injury. See note under Phillips v. Eggert et al., Ann. Cas. 1912A, 1114, containing many citations supporting the rule.

[5] The issue is also made that the verdict of the jury against the sheriff for the damage to the machine while in his possession is under the testimony inadequate and contrary to the great weight of the testimony. And this claim seems correct. The undisputed testimony and all the testimony on the issue of the damage to the car is as follows:

Appellee Hubbard testified: "I think the market value of the car at that time was $2,-

600 (meaning the time at which the same was purchased from the defendant). I was present down here in front of the courthouse the day it was sold. The car looked mighty bad at the time it was sold. The paint was practically all dead and gone; the fenders were disfigured; and I think the lights, the glass in the headlights, was broken, and the top worn out, and the upholstering was all crooked and worn out. I think the glass in the windshield was cracked; it looked like it had had very rough treatment. I looked at the speedometer, and I think it showed that it had been run 27,000 miles, or something like that. I know it was away up. I was up at Kanaman's at the time the sheriff levied on the car. The car was in good condition at the time sheriff took it away; it was just as good as it was at the time I bought it. I examined the car after it was sold to see to what extent it was worn and injured. I saw the car when it was overhauled, and it was worn very badly. They had to have new bearings for the rear axle, I think, and they had to have a new crank shaft. It was very badly worn, and showed bad treatment. They had to put a new top on it, and I think they put on some new castings. In the body there was a panel set in there where a hole had been shot through the body, and a new panel had to be put in. That was before it was sold; that was while it was in the hands of the sheriff. I would not have had the car at all when the sheriff sold it, and it is a hard proposition to state what it was worth at the time it was sold. I think it sold for something like $700—$775, I believe—and I do not know whether it was worth any more than that or not. I would think that was a big price for it to sell for cash on the market; but I think that is all it was worth in cash."

Appellee Martin testified: "The car was practically in just as good condition when we brought it back to Kanaman as it was when we left there; it was in good condition and classed as a new car."

Witness Fosdick, for the appellees, testified: "I remember making Mr. Hubbard a special price of $2,160 for the car, and the sale at the regular price list would have made it $2,300, I think. This car in question was a brand new car when Mr. Hubbard got it from Mr. Kanaman. It was in good running order. When Mr. Hubbard brought it back, it was in the same condition that it was when he took it out. After the car was taken in possession by the sheriff, I saw the car on the streets. I saw it some time during the month that the sheriff got it. Roy Pringle had it at the time I saw it. There were two people had it; I saw it once when Roy Pringle had it, and I saw it once with Mr. Chandler. I judge that Mr. Chandler had some sheriff's connection at that time, and I judge that Mr. Pringle was running it. I was not there when the sheriff went up and levied on the car. I think I saw that car in rent service during the Dallas Fair, and I think Mr. Pringle was running it. I saw it pretty near every day during the Fair. I saw it once up in Brooks' garage, and the condition of it was very poor. The car had had a hole shot in it with a gun, and had been repaired. From the size of the hole it looked like it had been shot with a shotgun. I saw Mr. Chandler with the car at least three times; but I cannot say who he had with him at those different times. I saw the car in the salesroom of the automobile company that bought it from the courts. That was directly after the sale. The car had been renovated at that time, and the last time I saw the car before it was sold by the courts the upholstering was badly worn, the doors were worn, and the top was worn and torn up. The car looked as if it had been used two or three years. The ordinary travel around town would not have put the car in that condition. The last time I saw the car before the sale was in Brooks' garage, and the market value of it would not have been less than $500, and could not have brought over $850. The reasonable cash market value would be between those prices, owing to the ability of the salesman, and who was buying it, etc."

An examination of the testimony shows that none of the witnesses placed the value of the car at the time the sheriff levied upon and took possession of same at less than $2,300, and at not more than $850 at the time the sheriff sold it. It actually brought at sheriff's sale the net amount of $743.70. The damages awarded by the jury were $553.68. This amount added to the amount realized from the sheriff's sale made pending the trial of the case aggregates $1,297.38, an amount short of the proven damage, adopting as a basis for the value of the machine the lowest amount fixed by any witness, in the sum of $1,002.62.

[6] The rule is firmly established in this state that, where there is any evidence in the record to sustain the verdict of the jury, the verdict will not be disturbed by the appellate court. It is also as firmly established that, where the verdict of the jury is manifestly against the evidence, or inadequate with or contrary thereto, it is the duty of the appellate court to set it aside. In the case at bar the evidence is so preponderatingly against the verdict returned, and the verdict so inadequate with the evidence, that it seems our clear duty to set it aside. Accordingly, the judgment of the court below as between appellant and appellees Ledbetter and his sureties is reversed, and the cause as between said parties is remanded to the court below for another trial upon the issue solely of the damages, if any, done to the automobile while in the control of the sheriff. As to appellant and appellees Hubbard and Martin, the judgment of the court below is in all things affirmed.

All other assignments of error of appellant

contained in his brief have been carefully considered, and, because, in our opinion, they present no reversible error, same are overruled.

Affirmed in part, and reversed and remanded in part.