TEMPLE LUMBER CO. et al. v. BROOCKS.

(Court of Civil Appeals of Texas. Galveston. Feb. 26, 1914. Rehearing Denied March 19, 1914.)

1. VENDOR AND PURCHASER (§ 231*) — BONA FIDE PURCHASERS—NATURE AND GROUNDS OF PROTECTION.

The owner of a land certificate conveyed the land located thereunder and transferred the certificate, and thereafter devised his estate, both real and personal, without describing any particular land to N., who died intestate. Plaintiff purchased the interest of one of N.'s heirs. The records of the county had been destroyed by fire and disclosed nothing regarding the title, and plaintiff did not know of the trans-

fers of the certificate, but believed that his grantor owned the land, though no one had been in possession. *Held,* that he was not entitled to protection as an innocent purchaser without notice, as such protection under the registration laws is extended only to a purchaser of a real or apparent title and not to a purchaser from one out of possession having no title and not shown by any record to have an apparent title.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 43, 55, 487, 513–539; Dec. Dig. § 231.*]

2. VENDOR AND PURCHASER (§ 231*) — BONA FIDE PURCHASERS—CONSTRUCTIVE NOTICE.

Where a purchaser of land from the heir of the original certificate holder's devisee was a lawyer and knew that no patent had been issued, that the only evidence of title in such certificate holder was the certificate, which was or should be on file in the general land office, and that the records of the county had been destroyed by fire, he was put upon inquiry and charged with notice of the transfer of the certificate, which certificate with the transfer indorsed thereon was on file in the land office.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 43, 55, 487, 513–539; Dec. Dig. § 231.*]

Appeal from District Court, Sabine County; A. E. Davis, Judge.

Action by John H. Broocks against the Temple Lumber Company and others. Judgment for plaintiff, and defendants appeal. Reversed and rendered.

Goodrich & Lewis, of Hemphill, Tom C. Davis, of Center, and George C. Greer and Minor & Minor, all of Beaumont, for appellants. D. M. Short & Sons, of Center, and J. F. Lanier, of Beaumont (Oliver J. Todd, of Beaumont, on motion for rehearing), for appellee.

PLEASANTS, C. J. This is an action of trespass to try title brought by John H. Broocks against the Temple Lumber Company. The land involved is a tract of 284 acres, a part of the Hugh Milligan 560-acre survey in Sabine county. The defendant vouched in on their warranty of title W. F. Goodrich, J. H. Synnott, and Ola Wrinkle, who had conveyed the land to defendant by deed of general warranty. The trial in the court below with a jury resulted in a verdict and judgment in favor of plaintiff for the land and in favor of the defendant against Goodrich, Synnott, and Wrinkle on their warranty of title.

The record discloses the following facts:

The tract of 560 acres, of which the land in controversy is a part, was located on August 30, 1840, by virtue of a land certificate for 640 acres issued to Hugh Milligan. On December 10, 1840, Hugh Milligan conveyed the 560 acres to Charles Peck by deed of said date duly executed and acknowledged. Peck by deed not dated but acknowledged September 10, 1841, conveyed said land to Walter Hinckley, and on November 27, 1847, Hugh Milligan, by a deed which recites the former conveyance from himself to Peck and the conveyance by Peck to Hinckley, conveyed the

560 acres to Walter Hinckley in order, as stated in said conveyance, "the more fully and effectually to vest the title and interest of, in and to said 560 acres of land in the said Walter Hinckley." This deed was duly acknowledged on the day of its date. It is not shown that their deeds were recorded in the deed records of Sabine county prior to 1905, when a certified copy of each procured from the General Land Office was recorded in said county. The land was located under a conditional certificate issued to Hugh Milligan in 1838. The unconditional certificate was issued on September 6, 1841, by the board of land commissioners of Sabine county, and was registered and approved on March 16, 1859, by the commissioner of claims. On the face of this unconditional certificate there is an unsigned written transfer of the certificate and all rights and benefits thereunder from Hugh Milligan to Charles Peck. This transfer is dated September 7, 1841. The following indorsement also appears on said certificate: "File 9, Sabine Co. 2nd Class, Unconditional Certificate Hugh Milligan, Walter Hinckley, assignee, August 17, 1858. Registered and approved March 16, 1859. Edward Clark, Commr. of Claims." The following indorsement appears upon the original field notes on file in the General Land Office: "File 9, Sabine Co., 2nd Class Field Notes 560 acres Hugh Milligan, cannot identify this with any survey on map, appears to be entirely incorrect, Nov. 1, 1847,—Creusbaur; does not close. Otherwise correct on maps of Sabine County; November 8, 1881; E. Schultz, Relocated Hugh Milligan. Canceled by cor. F. N.; error in Southing 43 varas; error in Eastings 89 varas, March 4, 1875. C. W. P." A corrected survey was made on December 11, 1903, and corrected field notes returned to and filed in the General Land Office December 16, 1903. The land was patented on January 5, 1904, to "the heirs of Walter Hinckley, assignee of Hugh Milligan, their heirs or assigns." Through mesne conveyances appellant has acquired the title of Walter Hinckley.

Hugh Milligan died in 1848. By his will, which was duly probated in Sabine county on July 31, 1848, he devised his estate, both real and personal, to Gideon A. Norford. This will does not describe or mention this land or any land belonging to said estate, and no inventory is shown to have been filed of the property of said estate. Gideon A. Norford died prior to 1882 intestate, leaving two heirs at law, a son, J. W. Norford, and a daughter, Mrs. Nannie Edwards. On June 29, 1891, Mrs. Edwards, for a valuable consideration paid to her by the plaintiff, John H. Broocks, conveyed to him an undivided one-half of the Hugh Milligan 560-acre survey. In a partition between plaintiff Broocks and the purchasers from J. W. Norford, the 284 acres in controversy were set aside to plaintiff.

All of the records of Sabine county except the surveyor's records were destroyed by fire in 1875. It is not shown what the surveyor's records disclose as to the location of the Hugh Milligan survey, and the only record in regard to said survey of which plaintiff had any knowledge at the time he purchased the land was a county map upon which said survey was shown as the Hugh Milligan survey.

There was no possession of the land by any one prior to plaintiff's purchase, and no assertion of ownership by the heirs of Gideon A. Norford is shown prior to their sale of same. Plaintiff testified that he was told by Mr. Arnold, who was county clerk of Sabine county, that Mrs. Edwards owned the land, and Mr. Arnold, as agent for Mrs. Edwards, sold him the land. He did not know Mrs. Edwards and did not see her prior to his purchase. He knew that a patent to the land had not been issued, and if he had thought about it he would have known that the certificate under which it was located was on file in the General Land Office. He made no investigation or inquiries of the General Land Office as to the certificate or the title and ownership of the land. At that time the certificate with the indorsements thereon before set out and the transfers before mentioned were on file in the General Land Office. The only examination made by him was of the records of Sabine county, which, as before stated, showed absolutely nothing in regard to the title. He had no actual notice of the transfers from Milligan and believed when he purchased that Mrs. Edwards owned the land. Plaintiff was a lawyer at the time he purchased the land. He knew at the time he purchased that the records of Sabine county had been destroyed by fire in 1875.

The facts above stated show that the defendant has a regular chain of title to the land in controversy from the sovereignty of the soil and plaintiff has no right of recovery unless the facts show that he purchased the apparent title for a valuable consideration in good faith and without any notice of defendant's title.

[1] We think the facts are wholly insufficient to establish his claim of title as an innocent purchaser without notice of defendant's title. In the first place, as said by our Supreme Court in the case of Waggoner v. Dodson, 96 Tex. 422, 73 S. W. 518, "The very essence of the claim of an innocent purchaser, protected by the registration laws, that he must have bought from one apparently invested with title." At the time of appellee's purchase from Mrs. Edwards, she had no title, legal or equitable. She was not, and had never been, in possession of the land, and there was no record in existence in Sabine county or elsewhere showing an apparent title in her. How then can it be said that appellee bought the apparent title and is therefore entitled to protection as an innocent purchaser? It seems to us that to hold that a purchaser of land from one not in possession and who has neither legal nor equitable title, and when there is

no record or deed in existence apparently investing the vendor with title, can be protected as an innocent purchaser under our registration laws, is to pervert the purpose of these laws, and to hold in effect that, if one fails to place his title upon record, any one who may assert claim to his land may sell it and invest the purchaser with title, provided the purchaser has no notice of the owner's title. Our registration laws are intended to protect those only who purchase a title or an apparent title, and appellee having purchased neither cannot claim protection thereunder.

[2] We are further of opinion that appellee cannot be heard to say that at the time he purchased he had no notice of appellant's title. He knew that no patent had been issued to the land and that the only evidence of title in Hugh Milligan, if he had any, was shown by the certificate by virtue of which the land was located, and this certificate was or should be on file in the General Land Office. He also knew that all the records of Sabine county had been destroyed by fire prior to his purchase. Knowing these facts, we do not think reasonable minds can differ in the conclusion that ordinary prudence on his part required that before he purchased the land he should ascertain what the certificate under which it was located showed as to the title; that being the only muniment of title known to exist, at the time of his purchase. If he had made the least investigation or inquiry at the General Land Office, he would have necessarily discovered that Hugh Milligan had no title to the land at the time of his death, and therefore no title passed to Mrs. Edwards through the will of Milligan. We have no doubt that appellee honestly supposed or believed that Mrs. Edwards had title, but this honest belief cannot protect him if the circumstances did not warrant a man of ordinary prudence to act in reliance on such belief. The fact that appellee never saw the certificate with the indorsements thereon or the transfers on file therewith does not make him an innocent purchaser if, under the circumstances, by the exercise of ordinary prudence on his part he would have seen them. The law requires reasonable diligence on the part of a purchaser to ascertain defects in his title, and he is charged with notice of all that appears upon the face of the instrument under which he claims title.

In the case of Simmons Creek Coal Co. v. Doran, 142 U. S. 417, 12 Sup. Ct. 239, 35 L. Ed. 1063, the Supreme Court of the United States quotes from the Supreme Court of Virginia as follows: "The rule is thus stated by the Virginia Court of Appeals in Burwell v. Fauber, 21 Grat. [Va.] 446, 463: 'Purchasers are bound to use a due degree of caution in making their purchases, or they will not be entitled to protection. Caveat emptor is one of the best settled maxims of the law, and applies exclusively to a purchaser. He must take care, and make due inquiries, or he may not be a bona fide purchaser. He is bound, not only by actual, but also by constructive notice, which is the same in its effect as actual notice. He must look to the title papers under which he buys, and is charged with notice of all the facts appearing upon their face, or to the knowledge of which anything there appearing will conduct him. He has no right to shut his eyes or his ears to the inlet of information, and then say he is a bona fide purchaser without notice.'" And again: "Whatever is sufficient to put a person on inquiry is considered as conveying notice; for the law imputes a personal knowledge of a fact, of which the exercise of common prudence might have apprised him."

We think upon the undisputed evidence and the principles of law above stated, the trial court should have instructed the jury to return a verdict in favor of the defendant. It follows that the judgment of the court below should be reversed, and judgment here rendered in favor of the appellants, and it has been so ordered.

Reversed and rendered.