**OSBORN v. TEXAS PAC. COAL & OIL CO. et al. (No. 9393.)**

(Court of Civil Appeals of Texas. Fort Worth. Nov. 20, 1920. Rehearing Denied Jan. 8, 1921.)

1. **Waters and water courses ⬅158½(2)—Instruction that lessee was not an innocent purchaser without notice of contents of prior lease held proper.**

In a lessee's action to enjoin another lessee of water rights from using water of spring for other than drilling and manufacturing purposes, where at the time of plaintiff's lease defendant was using such water and permitting its use by citizens of a town, the court properly assumed in the peremptory instruction for defendant that plaintiff was legally chargeable with notice of contents of defendant's lease, and therefore was not an innocent purchaser without notice, although defendant's lease was not of record when plaintiff's lease was made.

2. **Corporations ⬅387(2)—Plaintiff with lease expressly subject to defendant corporation's prior lease may not claim its acquired rights thereunder are ultra vires.**

Where plaintiff's lease, according to its expressed stipulations, was subject to terms of defendant corporation's prior lease, plaintiff was in no position to say that the right acquired by defendant under its lease to dispose of water to the public for domestic use was beyond its charter powers, and therefore invalid.

3. **Waters and water courses ⬅158(4)—Lessee's statement to lessor that he would build a refinery held not misrepresentation of facts, but contractual.**

Plaintiff's representation to lessor when procuring lease of water rights that he would build a refinery near said land within a reasonable time, held not misrepresentation of fact, but contractual in its nature, and not of itself a basis for cancellation of lease, unless made to deceive and cheat lessor, and with no intention on plaintiff's part to perform.

4. **Cancellation of instruments ⬅53—Findings supported by evidence held sufficient ground for cancellation of lease.**

In a tenant's action to enjoin another tenant under a prior lease from the use of water except for certain purposes, in which lessor intervened, seeking cancellation, findings that plaintiff represented to lessor that he would make, and had made, certain arrangements with defendant, and that lessor relied on such representation, held sufficient to support lessor's suit for cancellation on the ground of fraud.

*On Motion for Rehearing.*

5. **Landlord and tenant ⬅34(5)—Plaintiff need not plead or prove amount of damages for rescission of lease.**

The rule that fraud practiced will furnish no ground for recovery unless defrauded parties suffer injury, while applicable to suits for pecuniary damages, is not ordinarily applicable in suits to rescind the contract, and parties seeking to cancel lease need not plead or prove amount of damages.

6. **Quieting title ⬅7(2)—Lease held cloud on title warranting cancellation, where procured by fraud.**

A lease procured by fraud was a cloud on lessor's title, for which reason alone its cancellation was warranted.

Error from District Court, Eastland County; Joe Burkett, Judge.

Suit by Louis M. Osborn against the Texas Pacific Coal & Oil Company, in which John M. Winsett intervened. Judgment entered that plaintiff take nothing from defendant Oil Company and intervener lessor be decreed cancellation of oil lease, and the plaintiff brings error. Affirmed.

Sayles & Sayles, of Abilene, for plaintiff in error.

W. J. Oxford, of Thurber, and Chandler & Pannill, of Stephenville, for defendants in error.

DUNKLIN, J. John M. Winsett owned a tract of land in Eastland county on which there was a spring which flowed several hundred barrels of water daily. He, joined by his wife, executed to the Texas Pacific Coal & Oil Company a lease giving said company certain rights to use said water. Later, Winsett and wife executed another lease of certain water rights in the land to Louis M. Osborn, who instituted this suit against the Texas Pacific Coal & Oil Company to restrain that company from using any more of the water from the spring than was necessary to carry on the business of that company which was authorized by its charter, it being alleged in that connection that such business was limited by the charter of the company to mining for oil and gas and manufacturing such products. It was further alleged in plaintiff's petition that the defendant company was selling water from the spring to the public for domestic and private uses, and that such action on its part was ultra vires, because beyond its charter powers. Plaintiff further alleged that at the time he procured his lease he was informed by Winsett of the fact that the latter had already executed a water lease upon the same land to the defendant company, but that he was told by Winsett at the same time that said prior lease was for the use of the water for drilling and mining operations only. Plaintiff further alleged that said prior lease was not then of record, and that after examination of the record he did not pursue his inquiry further in order to inform himself of the contents of said lease, and in good faith took his lease from Winsett,

paying a valuable consideration therefor, believing that the former lease was limited to the use of the water by the defendant company for drilling and manufacturing purposes.

John M. Winsett filed a plea of intervention in the suit in which he sought a cancellation of Osborn's lease for fraud. According to allegations in intervener's petition the fraud consisted of misrepresentations made to Winsett by Osborn to the effect that he (Osborn) had already obtained the consent and agreement of the defendant company that intervener might execute said lease to Osborn, and that intervener was induced to execute the second lease by said misrepresentations; and, further, that the lease that was executed to Osborn contained certain provisions which were not agreed to by Winsett and wife, and which were not contained in the instrument when it was executed. A further allegation of fraud was to the effect that, in order to induce execution of the lease, Osborn represented to intervener that he expected within a reasonable time to build a refinery near said land if he could secure said water rights, that said representations by Osborn were fraudulently made for the purpose of inducing execution of the lease, and that intervener relied upon the same, and was thereby induced to execute the lease.

Upon a trial of the case a judgment was rendered that plaintiff take nothing of the defendant Texas Pacific Coal & Oil Company, and that intervener be decreed a cancellation of the lease executed to the plaintiff, Osborn. From that judgment Osborn has prosecuted this writ of error.

The lease to the defendant company was dated February 13, 1918, and was for a term of five years from that date, with an option on the part of the lessee, upon certain conditions, to extend same for a further period of three years. The lease designated Winsett and wife as "first party," and the lessee as "second party," and, among other privileges granted, gave to the lessee the right to enter upon the land, and "to use any and all water that second party desires for the purpose of drilling or for any other purpose in connection with Ranger oil field or with the village of Ranger."

That lease was not filed for record until after the execution and delivery of the lease to plaintiff Osborn. The town of Ranger is situated some two or three miles from the leased premises.

The lease from Winsett and wife to plaintiff, Osborn, was dated April 22, 1918. That lease recited the execution of the former lease to the defendant company, giving that company the right to use the water "for drilling and operating on said land," but further stipulating that Osborn should have all water from the land which had not been conveyed to defendant company by its lease.

At the time plaintiff's lease was executed the defendant company was operating under a charter which contained the following with respect to the company:

"The purposes for which this body corporate is organized are for the establishment and maintenance of oil companies, with authority to contract for the lease and purchase of the right to prospect for, develop, and use coal and other minerals, petroleum and gas; also the right to erect, build, and own all oil tanks, cars, and pipes necessary for the operation of the business of same."

The plaintiff never paid Winsett any consideration for the lease except the $1 recited as the down payment. Shortly after he procured the lease he went upon the land and constructed a tank of concrete for the purpose of impounding the water. The amount expended in this work was approximately $200. While constructing it he sold water to customers for distribution in the town of Ranger. But shortly after he began work on the tank further use of the water by him was objected to by the defendant company.

The trial was before a jury, to whom special issues were submitted, and the issues so submitted and the findings of the jury thereon, are as follows:

"Question No. 1. Did plaintiff represent to J. M. Winsett that he would make, and had made, satisfactory arrangements with the Texas & Pacific Coal & Oil Company to use the water not used by said company? Answer: Yes.

"Question No. 2. If you have answered 'Yes' to the above question, then answer: Did J. M. Winsett rely upon such representations? Answer: Yes.

"Question No. 3. Did plaintiff represent to J. M. Winsett that he would build a refinery near said land in a reasonable time? Answer: Yes.

"Question No. 4. If you have answered question No. 3 'Yes,' then answer: Did J. M. Winsett rely upon such representations? Answer: Yes.

"Question No. 5. Did the lease executed by J. M. Winsett and wife to plaintiff on April the twenty-second, 1918, contain the provision: 'And so long thereafter as water is saved, used, or produced therefrom or transported across said land and so long as said land is used for any purpose above mentioned'? Answer: Yes.

"Question No. 6. Did the lease executed by J. M. Winsett and wife to plaintiff on April the twenty-second, 1918, contain the provision: 'There shall not be counted any month or year during which said spring flows less than 250 barrels per day of twenty-four hours'? Answer: Yes."

And in obedience to a peremptory instruction so to do, the jury also returned a verdict in favor of the defendant, Texas Pacific Coal & Oil Company.

According to the testimony of plaintiff, who was a lawyer by profession at the time he was negotiating for this lease, and before it was executed, he was told by Winsett of the prior lease to defendant company. Plaintiff further testified as follows in answer to questions propounded by defendant's counsel on cross-examination:

"During the time that I was talking with Mr. Winsett about the T. P. Coal Company water lease there was some discussion between us as to the extent of the water that would be used by the T. & P. Coal Company under its water lease. He told me that he gave them permission to use all of the water if they needed to, but they were only using about one half; and I said, 'Well, if we can arrange with them to use the other half that they are not using I will pay you well for it; we will pay you well for it.' There was something said with reference to the purpose for which the T. P. Coal Company was to use the water under its water lease. He said they were drilling some wells, and were going to drill other wells. I told him that was what I understood; that they were using the Winsett water for drilling on other land. That was during the month of April, 1918. * * *

"He informed me that he had made a lease. I asked him to let me examine a copy of the lease at that time. I asked him for a copy of the lease. He did not tell me anything. He dodged the question. He told me that he had some kind of a lease to somebody else. I asked him right then to let me see a copy of the lease. I could not get him to say yes or no about the copy. I was trying to buy some water immediately. I was trying to buy some water from him. And I did not want to antagonize the man I was dealing with. I had no rights in the premises. I did not want to antagonize the man.

"I knew at the time this lease was taken that the Texas & Pacific Coal & Oil Company had headquarters at Thurber. I went to the record thinking I would find a copy of your lease. I examined the record and found none. I then went back to Ranger. I suppose there is a telephone line—telephone communications—and was at that time from Ranger to Thurber. I did not call the legal department of the Texas & Pacific Coal & Oil Company at Thurber to inquire about that contract. I did not do that because you would have bought out the lease before I could. I did not know that that was the place to find out what that lease actually contained. As a lawyer I did not know that. I didn't want to get you excited."

[1] In view of that testimony, in connection with the further fact that at the time plaintiff acquired his lease defendant company was in actual and open possession of the water supply on Winsett's land and was then using the water, not only for drilling and manufacturing purposes, but also was permitting the use of it by resident citizens of the town of Ranger for domestic purposes, apparently without charge, the court did not err in assuming in his peremptory instruction in defendant's favor, that plaintiff was legally chargeable with notice of the contents of the defendant's lease, and therefore not an innocent purchaser without notice. Temple Lumber Co. v. Broocks, 165 S. W. 507; Skov v. Coffin, 137 S. W. 450; Watkins v. Edwards, 23 Tex. 443.

[2] And since plaintiff acquired his lease with notice of the prior lease, and since his lease, according to its expressed stipulations, was subject to the terms of defendant's lease, he was in no position to say that the right acquired by the defendant company under its lease, to dispose of the water to the public for domestic use, was beyond its charter powers, and therefore invalid. Schneider v. Sellers, 98 Tex. 380, 84 S. W. 417; Russell v. T. & P. Ry. Co., 68 Tex. 652, 5 S. W. 686; 7 R. C. L. p. 532, § 516, Id., p. 567, § 553, and decisions there cited.

[3] The relief which plaintiff sought against defendant company was a judgment decreeing the exclusive right in plaintiff to use all the water from the premises in controversy except such as may be necessary to the conduct of defendant's mining and manufacturing business, and that said defendant be perpetually enjoined from using any of such excess, and for the reasons stated he failed to establish a right to that relief.

As shown by the verdict, the jury returned findings adverse to intervener's claim that certain provisions were inserted in the lease to plaintiff without the knowledge and consent of intervener and his wife who executed it. There were further findings in answer to issues Nos. 3 and 4 to the effect that, in order to induce intervener to execute the lease plaintiff represented that he would build a refinery near said land within a reasonable time, and that intervener executed the lease to plaintiff, relying upon such representations. However, the representation so made by plaintiff to induce the execution of the lease was not a misrepresentation of fact, but was contractual in its nature. And the same would not, of itself, furnish a proper basis for a cancellation of the lease unless it was made for the purpose of deceiving and cheating intervener, and with no intention on plaintiff's part to perform the contract, C., T. & M. C. Ry. Co. v. Titterington, 84 Tex. 218, 19 S. W. 472, 31 Am. St. Rep. 39. There was no finding by the jury that plaintiff made that representation with a fraudulent intent to deceive intervener, and with no intent on plaintiff's part to perform that contract. Nor was there any allegation in intervener's petition that plaintiff had no intention to perform that contract at the time he made it.

[4] The findings of the jury in answer to issues Nos. 1 and 2, read in the light of the pleadings and evidence, are sufficient to support intervener's suit for cancellation of plaintiff's lease on the ground of fraud, and

the evidence was sufficient to sustain those findings. The petition presented that issue of fraud in an amplified form, and the court did not err in overruling special exceptions addressed thereto on the ground of alleged insufficiency as a basis for rescission.

The judgment of the trial court is in all respects affirmed.

### On Motion for Rehearing.

[5] It is insisted by plaintiff in error that neither intervener's petition for a cancellation of the lease to plaintiff, Osborn, nor the evidence introduced in support thereof, was sufficient to warrant such a cancellation, in that there was an absence of any showing that intervener was injured by the fraud practiced upon him by Osborn. The following authorities are cited to support that contention: Lemmon v. Hanley, 28 Tex. 220; Furneaux v. Webb, 33 Tex. Civ. App. 560, 77 S. W. 828, 20 Cyc. 13.

Those authorities announce the general rule that fraud practiced will furnish no ground for relief unless the party defrauded suffered some injury as a consequence. That rule is usually applicable in suits to recover pecuniary damages by reason of the fraud and that was the character of suits in the cases cited. But that rule is not ordinarily applicable in suits to rescind a contract or to a deed of conveyance. 12 R. C. L. pp. 390, 391, and 392; 1 Black on Rescission and Cancellation, § 112, pp. 314 and 315; Kanaman v. Hubbard, 160 S. W. 304, and authorities there cited; Sargent v. Barnes, 159 S. W. 366; 3 Williston on Contracts, § 1525. According to those authorities, which control this case, it was not necessary for the intervener to plead and prove the amount of damages suffered by reason of the fraud practiced upon him. His suit was not to recover pecuniary damages, but for a cancellation of the lease to Osborn for the fraud practiced. Besides, the price which Osborn agreed to pay for this lease, to wit, $50 per year, in connection with other circumstances in evidence, was proof sufficient to show that it had some value, and a finding to that effect by the trial judge would be presumed, if the same were necessary to support the judgment. Vernon's Sayles' Tex. Civ. Stats. art. 1985.

[6] At all events, the lease was a cloud upon intervener's title, and for that reason alone its cancellation was warranted. Corpus Juris, p. 1189.

Even injunctive relief may be granted against the casting of a mere cloud upon title to real estate. Canales v. Canales, 190 S. W. 842; Stolte v. Karren, 191 S. W. 600; V. S. Tex. Civ. Stats. art. 4643, sub. 3.

The question now presented was urged by plaintiff in error on the original hearing, and hence was not discussed in our original opinion. And it may be at least doubted that it was sufficiently presented in exceptions urged to intervener's pleadings, or in the briefs filed by plaintiff in error here; but, aside from that suggestion, we have considered it.

The motion for rehearing is overruled.