### EDMONDS et al. v. WHITE.   (No. 2626.)

(Court of Civil Appeals of Texas. Texarkana. Dec. 15, 1922. Rehearing Denied Jan. 25, 1923.)

**1. Champerty and maintenance ⊜⊃6(1)—Assignee could sue to rescind stock purchases.**

As respects right to rescind purchases of stock by plaintiff and others as induced by fraud, *held*, that plaintiff had a right to sue for the other persons under an assignment of their interests and an understanding that the amount of any recovery by plaintiff as assignee, less expenses, was to be prorated and paid to the assignors; the common-law rule, that the assignment of a mere right to file a bill in equity for fraud committed on the assignor is void as champertous, not having been adopted by Vernon's Sayles' Ann. Civ. St. 1914, art. 5492, adopting the common law.

**2. Joint-stock companies and business trusts ⊜⊃6—Stock purchase contracts held not ratified by assignment thereof.**

As respects right of plaintiff to sue for rescission of purchases of stock by himself and others, whose interest was transferred to plaintiff by instruments purporting to transfer the stock issued to assignors and also "all causes of action, in law or in equity," which the assignors had "by reason of fraud, misrepresentation," or otherwise, *held*, that the assignment did not operate to ratify or affirm the validity of the contracts of purchase; the assignments not being intended as ratification of the contract.

**3. Joint-stock companies and business trusts ⊜⊃6—Rescission of stock purchase held not dependent on showing of injury from fraud.**

As respects right to rescind purchases of stock by plaintiff and others as induced by fraud, *held*, that plaintiff's right to relief did not depend on showing injury from the fraud.

Hodges, J., dissenting.

Appeal from District Court, Bowie County; Hugh Carney, Judge.

Action by Joe White against T. A. Edmonds and others. From a judgment for plaintiff, defendants appeal. Reversed and rendered as to defendant W. G. McIntyre, and as to other defendants affirmed.

See, also, 226 S. W. 819.

Preston B. Cox, of Wichita Falls, and Keeney & Dalby, of Texarkana, for appellants.

Elmer L. Lincoln, of Texarkana, for appellee.

WILLSON, C. J. Appellee was the plaintiff in the court below. His suit against appellants, T. A. Edmonds, T. G. Williams, A. R. Bleakley, F. L. Shackelford, and W. G. McIntyre, was to rescind certain contracts covering a purchase by him and purchases by a number of other persons of shares of stock in the Southland Oil Company, a joint-stock association existing by virtue of a trust agreement, by the terms of which appellants (except McIntyre) as trustees held the property of the association and transacted the business thereof, and to recover back sums aggregating $10,450 alleged to have been paid by him and said other persons for the stock.

Appellee's claim of a right to the relief he sought was predicated on allegations in his petition showing that appellants had practiced fraud on him and said other persons, in that appellants had induced him and them to subscribe and pay for the stock by falsely representing to him and them that the 14 acres of land in Wichita county on which the oil company owned an oil and gas lease was situated within 1,700 or 1,800 feet of the "initial Fowler well," which was an oil-producing well in the Burkburnett oil field.

The judgment was based on findings of a jury (warranted by the testimony, we think): (1) That appellants or their selling agents made the representation as claimed by appellee; (2) that the representation was a material one and induced appellee and said other persons to buy the stock; and (3) that the representation was false. On those findings and others made by the trial court judgment was rendered in appellee's favor for $6,350.

[1] By a special exception appellants questioned the sufficiency of the petition, so far as it was predicated on a right in appellee to the relief he sought as assignee of said other persons. The ground of the exception was that the right to such relief "was not (quoting) a proper subject of assignment, but such assignment is void." And, on the same ground, appellants requested the trial court to instruct the jury to find in their favor as to the recovery sought by appellee as such assignee. The assignments attacking as erroneous the action of the trial court in overruling the exception and in refusing the instruction present the question about which we have had most doubt in determining the disposition to be made of the appeal.

It appears from the record that only $500 of the amount awarded appellee by the judgment was on account of money paid by him

for shares of the stock. The remainder of the amount was the aggregate of sums paid for such stock by the other persons referred to, about 60 in number. It further appears that each of said other persons by an instrument in writing assigned all his "right, title, and interest in and to the Southland Oil Company" to appellee, together with "all causes of action or defense, in law or equity," the assignor had against said oil company and the trustees named above, "by reason of fraud, misrepresentation, breach of contract, or otherwise, arising out of any relation whatsoever" between the assignor and the oil company and said trustees. It further appears that it was understood between appellee and each of said other persons that the amount of any recovery by appellee as assignee, less the expense of recovering same, was to be prorated and paid over to the assignors.

Appellants insist that the facts stated showed that the only right acquired by appellee as assignee of the other persons "was to bare right to file a bill in equity to set aside" the contracts made by said persons with appellants, and they further insist that if it should be held that the assignments operated to pass any other right to appellee they necessarily also operated as an affirmance of the contracts by the assignors, and that appellee's suit for a rescission of the contracts therefore was not maintainable.

There is no doubt the rule at common law, enforced in many jurisdictions outside this state, is, as stated in 5 C. J. 892, that—

"The assignment of a mere right to file a bill in equity for fraud committed on the assignor is void as being against public policy and savoring of maintenance."

The doubt we have entertained is as to whether this state, in adopting the common law (article 5492, Vernon's Statutes), adopted the rule. We have not been referred to and have not found a case decided by a court in this state in which the question had been directly presented. But, looking to the basis for the rule, we think it has been in effect determined that it was never adopted in this state. The rule had its origin in the common-law doctrine of champerty and maintenance (Breeden v. Insurance Co., 220 Mo. 327, 119 S. W. 576), which, and the reasons for it, are stated at length in 11 C. J. 231 et seq., and 5 R. C. L. 268 et seq. It has been held that the reasons for that doctrine have never existed in this state and that it has never been the law here. Bentinck v. Franklin, 38 Tex. 458; Stewart v. Railway Co., 62 Tex. 246; Perry v. Smith (Tex. Com. App.) 231 S. W. 340. If that is true, then a basis for the rule never existed in conditions here, and it would be illogical to hold that it is a part of the law of this state. We conclude, therefore, that the contention, so far as it is that appellee was not entitled to maintain the suit because of the rule referred to, should be overruled.

[2] That leaves for determination the part of the contention based on the view that the legal effect of the assignments to appellee was to affirm the validity of the contract by which the assignors purchased the stock. Of course, if that is true, appellee could not maintain a suit for the rescission of the contracts, for they were voidable only, and the assignors electing to treat them as valid would be binding on them and on appellee as well. 2 Black on Rescission and Cancellation, § 610 et seq. But the question as to whether the assignors ratified the contracts or not was one of fact, and the determination thereof depended on whether they intended by the assignments to ratify them or not. Id. § 611. Looking to the face of the instruments, it appears that they purported to transfer the stock issued to the assignors and also "all causes of action, in law or in equity," the assignors had "by reason of fraud, misrepresentation," or otherwise, arising out of their purchase of the stock, and looking to the testimony it appears that the purpose and intent of the parties to the instruments was to pass to appellee the right the assignors had to sue for a rescission of the contracts covering the purchases of stock. Appellee was not to share in the proceeds of any recovery had by him as assignee. In fact, he was a mere agent appointed by the assignors to represent them in his own name in a suit to recover back sums they had paid for the stock, and as such agent was to account to them for any sum he recovered for them. In the light of the testimony the assignors plainly did not intend when they made the assignments to thereby ratify the contracts. Just as plainly, the only purpose they had in making the assignments was to enable appellee in his own name to commence and prosecute this suit for them as he did. We see no reason why it should be held they could not do that. Certainly no right of appellants was prejudiced by the fact that the suit was prosecuted for all the purchasers of the stock in appellee's name, instead of in the names of the assignors. On the contrary, appellant was put to the necessity of defending only one, instead of 60 or more suits, and relieved of the extra expense and trouble the defense of the 60 or more suits would have imposed on them. The conclusion reached requires the overruling of the first, eighth, nineteenth, and twenty-first assignments of error.

[3] Another contention presented by appellants is that the judgment was not warranted because, they say, it did not appear from either the pleadings or the proof heard that the stock was worth less at the time appellee and said other persons purchased it than the sums they respectively paid for it. The contention is on the theory that ap-

pellee was not entitled to the relief he sought, in the absence of proof that he and his assignors suffered pecuniary loss by reason of the fraud alleged to have been practiced on them. If the suit was for damages for fraud and deceit practiced, there would be merit in the contention, for the rule in that character of case, of course, requires the complaining party to allege and prove damages before he can recover same. But this was a suit for a rescission of the contracts, and in that kind of a case, as we understand decisions by the courts of this state, it did not devolve on appellee, as a basis for the relief he sought, to either allege or prove that he and his assignors suffered pecuniary loss as a result of the alleged fraud. Kanaman v. Hubbard (Tex. Civ. App.) 160 S. W. 304; Id., 110 Tex. 560, 222 S. W. 151; Osborn v. Oil Co. (Tex. Civ. App.) 229 S. W. 359. In the case last cited the court after stating that the general rule is that "fraud practiced will furnish no ground for relief unless the party defrauded suffered some injury as a consequence," said:

"That rule is usually applicable in suits to recover pecuniary damages by reason of the fraud. * * * But that rule is not ordinarily applicable in suits to rescind a contract or to a deed of conveyance. [Citing authorities.] According to those authorities, which control this case, it was not necessary for the intervenor to plead and prove the amount of damages suffered by reason of the fraud practiced upon him. His suit was not to recover pecuniary damages, but for a cancellation of the lease to Osborn for the fraud practiced."

The cases decided by courts of other states are in conflict, it being held in some of them that even when the suit is for a rescission the plaintiff must show that he suffered some actual loss or injury as a direct consequence of the fraud, while in others the contrary is held to be the law. After noting the conflict, the author of Black on Rescission and Cancellation says, in volume 1, at page 314:

"The soundest reason, however, appears to support those descisions which discriminate between cases where the deception is as to the identity or character of the subject-matter and those where the deception concerns some collateral matter, and which hold that there must be proof of loss or injury in the latter class of cases, but not in the former. Thus is it said that, where a purchaser of property has been deceived by the false and fraudulent representations of the vendor, it is no obstacle to his right to rescind that, in spite of all, he has secured good value for his money, or that he is not likely to suffer any loss. 'In an action of deceit, no doubt, this would be relevant on the question of damages, in order to show that there were none, although to this the authorities are not all agreed, but not so upon a bill to rescind. The purchaser is entitled to the bargain which he supposed and was led to believe he was getting, and is not to be put off with any other, however good.'"

And at page 1010, volume 2, of the work referred to the author says:

"A purchaser of stock in a corporation may rescind his purchase, return the stock, and recover back what he has paid, when he was induced to make the purchase by his (justifiable) reliance upon false and fraudulent representations made to him concerning the financial condition and resources of the corporation, as, for instance, to the effect that it owns such and such property. Thus, one may rescind a subscription for stock in a company, or a purchase of such stock, on the ground that he was induced to buy by the false statement that the company had purchased and was the owner of certain property."

We conclude, on the authorities cited, that it was not necessary for appellee to allege and prove as a basis for the relief he sought that he and his assignors suffered pecuniary loss as a result of the fraud alleged to have been practiced upon them, and therefore overrule the assignments of error numbered 2, 3, 4, 7, 9, 10, 11, 12, 13, 14, 15, 16, 20 and 22.

Complaint is made of the refusal of the court to instruct the jury to find in favor of appellants Edmonds, Bleakley, Williams, and McIntyre. The contention that such refusal was error is based on the testimony of the witness Case, appellants' selling agent, that the agreement under which he acted as such agent was with appellant Shackelford, that Shackelford sent him the supplies he needed as such agent, that all money he received for the sale of stock was sent by him to Shackelford, and that he had no communication with the other appellants during the time he acted as such agent. We think the contention should be sustained so far as it applies to appellant McIntyre, and overruled so far as it applied to appellants Edmonds, Bleakley, and Williams. The only testimony we have found in the record which it can be pretended showed that McIntyre had any connection with the Southland Oil Company is a recital in an instrument mentioned as a "subscription contract" that he was one of the lessees of the 14 acres of land hereinbefore referred to. That we think, did not warrant the judgment against him. But it appeared without contradiction in the testimony that the other appellants as trustees had the management and control of the oil company and transacted all the business thereof, that Case in his dealings with appellee and his assignors acted as the agent of the oil company, and that the money paid by appellee and his assignors for stock was turned over to said company before the stock was issued by it. We think that testimony warranted the judgment against Edmonds, Bleakley, Williams, and Shackelford.

The contention that the trial court erred when he denied appellants' motion to post-

pone the trial of the cause, based on the absence of appellants Shackelford and Bleakley from the court, is overruled. It does not appear from the record that the court abused the discretion he had in the matter. And the contention that the judgment is excessive, in that it was in appellee's favor for $100 on account of stock assigned to him by Julin Estes and for $100 on account of stock assigned to him by G. W. Nichols, which those parties were not entitled to recover of appellants, is also overruled. It is plain from the testimony in the record that appellee was not entitled to recover the sums, aggregating $200, specified, but we cannot say from the record that they were included in the $6,350 awarded appellee by the judgment.

The judgment will be affirmed, so far as it is in appellee's favor against appellants Edmonds, Bleakley, Williams, and Shackelford. It will be reversed, so far as it is in appellee's favor, against appellant McIntyre, and judgment will be here rendered that appellee take nothing as against said McIntyre.

HODGES, J., dissents.